EMMONS v. NEWMAN.

CONTRACT.—*Partnership.—Accounting.*—Suit on a contract, by which the defendant agreed to purchase and maintain a stock of jewelry at his own cost, and dispose of the same, and the plaintiff was to repair jewelry, etc., brought to the store, and receive the charges for such labor, as his compensation.

*Held*, that the plaintiff was not a partner.

*Held*, also, that if the proceeds of his labor went into the business, and also articles of his personal property, he was entitled to an accounting upon defendant's forcibly taking possession of the stock and place of business.

INSTRUCTIONS.—*Bill of Exceptions.—Motion for New Trial.* — Instructions given or refused cannot be brought before the Supreme Court on appeal as forming part of a motion for a new trial, but must be made a part of the record by bill of exceptions or in the mode pointed out in sections 324 and 325 of the code.

APPEAL from the Montgomery Common Pleas.

BUSKIRK, J.—The appellant has assigned three errors; first, that the court erred in overruling the demurrer to the complaint; second, that the court erred in refusing to give

certain instructions asked by the appellant; third, that the court erred in overruling the appellant's motion for a new trial.

It is necessary to a proper understanding of the first assigned error that we should set out the complaint, which was as follows:

"Thomas Newman, plaintiff, complains of Alden Emmons, defendant, and says that on the first day of May, 1870, the said plaintiff and defendant entered into a co-partnership in the purchase and sale of clocks, watches, jewelry, notions, and all things in that line of merchandise, including silversmithing and repair of watches, clocks, and jewelry, in the city of Crawfordsville; that the said plaintiff being a practical silversmith, and the said defendant being entirely ignorant of the business, it was agreed that the said defendant should furnish the capital to purchase the stock in trade, and should attend and manage the sale of the clocks, watches, jewelry, etc., of the concern, and should thereby keep up the stock at his own cost and charges; and the said plaintiff was to do the repairs of the work brought to the shop, and was to receive for the work so done the amount charged therefor as and for his part of the profits of the firm, and in compensation for the labor performed.

"And the said plaintiff avers that the said defendant only put into the partnership about two hundred and fifty dollars, and instead of paying for the goods purchased at the time of purchase, he bought them in the name of the firm, upon time, and would pay along as sales could be made, until his purchases amounted to some eighteen hundred dollars, purchased in the name of the firm, a portion of which purchases are still unpaid. And the said plaintiff would further aver that he put in the concern in goods fifty dollars and in cash twenty-seven dollars, and that the value of the work done by him, the proceeds of all of which went into the firm and into the possession of said defendant, amounted to the sum of six hundred dollars. And the said plaintiff would further aver that the said defendant, without any just

cause, on the 8th of September, 1870, forcibly took possession of all of the said partnership property, including the books, notes, accounts, cash, clocks, watches, jewelry, notions, etc., and refused to allow said plaintiff possession or use of any part of the same, to the great injury of the said plaintiff; wherefore," etc.

Did the court err in overruling the demurrer to the complaint? It is earnestly maintained that the facts stated in the complaint failed to show that the plaintiff and defendant were partners. Various objections are urged to the sufficiency of the complaint, but the one most relied upon by counsel in argument is, that as the plaintiff was to receive the amount received for the work done by him, he was not a partner; that there was no mutuality, as the plaintiff was to receive for his compensation the amount received for work by him performed, without reference to whether there were profits or losses. It is insisted by the appellant that the facts stated show that the plaintiff was a mere workman.

It is, on the other hand, claimed by the appellee that the facts stated show that there was a partnership, but that if they fail in showing a partnership, they show the value of the services rendered by the plaintiff, and that the proceeds went into the hands of the defendant; and that it makes no difference whether they were partners or the defendant the owner of the establishment and the plaintiff the employee working for wages; and that if they were partners, then the plaintiff should recover according to the terms of the partnership; and if they were not partners, the plaintiff would be entitled to recover the value of his work and the price of the property that was taken possession of by the defendant.

Do the facts stated in the complaint constitute the parties partners? The agreement between the parties is stated as follows: "It was agreed that the said defendant should furnish the capital to purchase the stock in trade, and should attend and manage the sale of the clocks, watches, jewelry, etc., of the concern, and should thereby keep up the stock at

his own cost and charges, and the said plaintiff was to do the repairs of the work brought to the shop, and was to receive for the work so done the amount charged therefor as and for his part of the profits of the firm, and in compensation for the labor performed."

The precise question under consideration was considered and decided by this court, adversely to the appellee, in *Macy* v. *Combs*, 15 Ind. 469.

The rule of law was well stated, in *Loomis* v. *Marshall*, 12 Conn. 69, where it was said: "A community of interest in land does not of itself, constitute a partnership; nor does a mere community of interest in personal estate. There must be some joint adventure, and an agreement to share in the profit of the undertaking. *Green* v. *Beesley*, 2 Bing. N. C. 108; *Fereday* v. *Hordern*, Jacob, 144; *Porter* v. *M'Clure*, 15 Wend. 187. This community of profit is the test to determine whether the contract be one of partnership; and to constitute it, a partner must not only share in the profits, but share in them as a principal; for the rule is now well established, that a party who stipulates to receive a sum of money in proportion to a given *quantum* of the profits, as a reward for his labor, is not chargeable as a partner."

Reference is then made to a large number of adjudged cases, from which the court deduces the following rule: "The rule which these and other cases establish is founded on the distinction which has been taken between agreements by which the parties have a specific interest in the profits themselves, as profits, and such as give to the party sought to be charged as a partner, not a specific interest in the business or profits, as such, but a stipulated proportion of the profits as a compensation for his labor and services."

The authorities on this point are not uniform. It was said by Lord ELDON, in *Ex parte Hamper*, 17 Ves. 494: "It is clearly settled, though I regret it, that, if a man stipulates, that, as the reward of his labor, he shall have, not a specific interest in the business, but a given sum of money, even in proportion to a given *quantum* of the profits, that will not

make him a partner; but if he agrees for a part of the profits, as such, giving him a right to an account, though having no property in the capital, he is, as to third persons, a partner."

Prof. Parsons, in his work on partnership, admits the existence of the distinction and rule above stated, but contends that the distinction is not very reasonable or useful, and presents the authorities maintaining the opposite doctrine; but he lays down the rule to be as stated by Lord ELDON, that where a person is to receive a sum of money in proportion to a given *quantum* of the profits, he is entitled to an account.

We feel constrained, by the number and weight of the elementary writers and adjudged cases, to hold that the parties to this action were not partners; but this is, by no means, decisive of the case; for the appellee was entitled to an accounting; for it is alleged that all the sums of money received by him for work went into the firm, as well as the money and personal property put into the concern; and that the defendant had forcibly taken the possession of all the partnership property, including the books, notes, accounts, cash, clocks, watches, jewelry, notions, etc., and refused to allow the said plaintiff the possession or use of any part of the same.

The plaintiff was entitled to whatever relief the facts justified. If he was a partner, and the defendant had taken possession of all the partnership property and assets, he had a right of action. If he was to receive for his work the amount charged and received therefor, and if this money had gone into the concern, then he was entitled to an accounting, for the purpose of ascertaining how much he had earned, and what was coming to him. If he put money, watches, tools, and a safe in the store, and the defendant had converted them to his own use, he was entitled to recover their value.

We are of the opinion the court committed no error in overruling the demurrer to the complaint.

Did the court err in overruling the motion for a new trial?

It is insisted by the appellant that the court erred in refusing to give certain instructions. It is maintained by the appellee that the question is not presented by the record.

There are two ways in which an instruction that has been asked and refused may be made a part of the record. The one is by writing at the close of each instruction the words, "refused and excepted to," and this should be signed by the party or his attorney. 2 G. & H. 201, sec. 325. This mode was not adopted in this case. The other mode is by embodying the instructions "refused and excepted to" in a bill of exceptions.

Was this mode adopted in the case under consideration? The defendant embodied in his motion for a new trial certain instructions, which, he alleged, had been asked and refused; and the refusal to give which was assigned as reasons for a new trial. The motion was overruled, and the defendant excepted. The evidence was put in the record by a bill of exceptions.

Near the close of the bill of exceptions, the following entry appears: "And be it further remembered that, on the same day, and at the proper time, the defendant moved the court for a new trial in this cause, which motion is in the words and figures following, to wit:"

The clerk, in making out the transcript, has inserted in brackets, after the above entry, the following: "[See page 8, line 16, to line 13, page 10.]"

Conceding that the above reference of the clerk incorporated into the bill of exceptions the instructions asked and refused, we do not see how the condition of the appellant would be improved. There must be an exception to the giving or refusal to give an instruction, and that exception must be noted at the end of the instruction, or in the bill of exceptions. The mere copying the instruction into the bill will avail nothing, unless it is stated in the bill that the party excepted, and this is not done in this case.

But it may be maintained that, as a motion for a new trial becomes a part of the record without a bill of exceptions,

and as the motion in this case embodied the instructions said to have been asked and refused, the instructions were thus made a part of the record.

It was decided by this court, in *McSheely* v. *Bentley*, 31 Ind. 235, and in *The Indianapolis Piano Manufacturing Company* v. *First National Bank of Indianapolis*, 33 Ind. 302, that this court cannot accept, as true, the statements contained in a motion for a new trial. It is the well settled practice of this court that when a motion for a new trial is made for the reason that the finding of the court or the verdict of the jury was not sustained by, but was contrary to, the evidence, no question is presented for review here, unless the evidence is embodied in a bill of exceptions. The same rule must obtain in this case. How do we know that any such instructions were asked and refused? We do not know but that the court overruled the motion because no such instructions had been asked, or, if asked, had been given. Instructions given or refused must be made a part of the record by a bill of exceptions, or in the mode pointed out in sections 324 and 325, 2 G. &. H. 198. *The Jeffersonville, etc., R. R. Co.* v. *Cox*, 37 Ind. 325.

It remains to inquire and determine whether the verdict was sustained by sufficient evidence. We have read and considered the evidence, and find it to be very conflicting and contradictory. The evidence consisted mainly of the testimony of the parties. The testimony of the plaintiff was not consistent and harmonious. He contradicts himself. It was a question of credibility. It was the duty of the jury to reconcile and harmonize, if possible, all the evidence, so that it might all stand and be considered together; and if this could not be done, then they were required to determine which they would believe, and which they would disbelieve. The parties consented to a jury of six men. They seem to have been chosen and agreed upon on account of their deservedly high character for intelligence, fairness, and integrity. We are satisfied that the jury got nearer the justice of the case than we could do by reading

the evidence, as it appears on paper, without any of the opportunities possessed by the jury of seeing and observing the appearance, manner, and conduct of the witnesses, their intelligence, their means of information, and their willingness or unwillingness to testify fully and frankly to all matters within their knowledge.

We cannot disturb the verdict.

The judgment is affirmed, with costs.

*L. Wallace* and *J. M. Butler*, for appellant.

*M. D. White* and *P. S. Kennedy*, for appellee.