KEISER v. THE STATE.

LIQUOR LAW.—*Sale without License.*—*Contract.*—*Partnership.*—*Principal and Agent.*—On the trial of a defendant charged with selling intoxicating liquor, without license, in a less quantity than a quart at a time, the evidence established that the defendant, who was the owner of the premises where the sale was made, had made such sale pursuant to, and in compliance with, the terms of a written contract, entered into by the defendant, who had no license, and another who had a license, whereby the defendant leased such premises to the licensee for a saloon, upon condition that the licensee should furnish the stock necessary to carry on the business, that the defendant, in the name of the licensee, should make all purchases and sales of such stock, should pay all debts and expenses incurred in carrying on the business out of the proceeds thereof, and that, for his services and the rent of his building, he should receive all the profits of the business, except a certain sum per diem, which was to be paid to the licensee.

*Held,* that, by the terms of such agreement, the licensee and defendant became, as between themselves, not partners, but principal and agent, and that such sale was protected by such license.

From the Henry Circuit Court.

*M. E. Forkner,* for appellant.

*C. A. Buskirk,* Attorney General, and *J. M. Brown,* Prosecuting Attorney, for the State.

WORDEN, J.—The appellant was indicted for retailing intoxicating liquor to James Duke, without a license, and, upon trial by jury, was convicted.

One Jacob Sweigart, Jr., had a license to retail, and there was an agreement between him and the appellant, which was given in evidence, as follows, viz.:

"Articles of agreement entered into this 5th day of February, A. D. 1877, by and between John U. Keiser, of Henry county, in the State of Indiana, party of the first part herein, and Jacob Sweigart, Junior, of said county and State, party of the second part herein, witnesseth. That said first party hereto being the owner in fee simple of the two-story brick building, number 117 East Broad street, (sometimes called Broadway,) situate upon the south side of said street, between Main and

Elm streets, in the town of Newcastle, in Henry county, State of Indiana, upon a portion or part of lot number two, in block number eleven, in the original plat of said town; and whereas the said Jacob Sweigart, Junior, party of the second part herein, having been duly licensed by and according to law, in that behalf made and provided, to sell and barter, in less quantities than a quart at a time, spiritous, vinous and malt liquors, with the privilege of permitting the same to be drank in and upon the premises where said liquors are sold and bartered, said license being issued to the said Sweigart, second party herein, for the premises above described.

"Now, therefore, the said John U. Keiser, first party herein, for and in consideration of the rents, covenants, promises and agreements of the said Sweigart, Junior, second party herein, hereby lets and leases unto Sweigart, for and during the period of one year from and after the date of these premises, the first or street-front room, with the cellar, situate upon and belonging to the said premises hereinabove described, to have and to hold unto said second party for the use and purposes of a saloon for retailing liquors under and by virtue of the license obtained by said Sweigart, second party herein, bearing date of January 10th, 1877.

"Said Sweigart, second party herein, in consideration of the above covenant and agreement of said first party, hereby accepts said lease of said premises for the uses and purposes, and for the time and period, as hereinafter set out and specified, and promises and agrees to and with the said first party to do and perform the following, viz.: To take said lease for said period; to use due care and diligence in the preservation of said demised premises, and to surrender up the same at the expiration of one year from the date hereof, in good order and condition, reasonable wear and tear and the acts of God and the public enemy excepted; to use all diligence and exertion in the prosecution and carrying on of said business;

to keep a decent and orderly house, and neither to commit, permit or suffer any violation of law whatsoever upon said demised premises; to employ said Keiser, first party herein, to purchase the necessary and requisite stock to carry on and maintain said business, and to clerk and act as salesman therein; to pay over to Keiser as his compensation for his services, rent and use of fixtures in said building, all the proceeds and receipts of said business, saving, excepting and reserving the sum and amount of two dollars per diem, his, said second party's, share of the profits of said business.

"Said second party is to exercise all due care and supervision over said business, to keep up the stock and material required therein, notifying said first party of any deficit or lack therein, and requiring and directing said first party to procure the same in the best market and upon the most reasonable and favorable terms, the same in all cases to be shipped to said second party and billed in his, said second party's, name, said bills to be met and liquidated by said first party out of the funds delivered and paid over out of the proceeds of said business, as hereinabove stated.

"Said second party shall, when the circumstances and necessities of said business in his judgment require and demand it, procure, hire and pay for such additional help and assistance as may be needed, either clerks, laborers, porters or any other kind demanded by the exigencies of said business, the same to be paid for out of and from the part or portion of the proceeds of said business going to said first party, so that in no case shall the profits of the said second party be diminished or cut down below said sum of two dollars per diem.

"It is hereby agreed and understood by and between the respective parties hereto, that all former agreements, contracts, leases and other writings whatever entered into by said parties hereto in reference to the said business, prior to the date of these presents, are hereby declared an-

nulled, revoked and declared null and void and for no effect."

This agreement was duly signed by the parties.

There was evidence tending to show that the sale made by the appellant was made by virtue of and under the agreement above set out, and the court charged the jury as follows:

"If the defendant sold to James Duke intoxicating· liquor, as charged in the indictment, and made such sale under and by virtue of and pursuant to the written contract between him and Jacob Sweigart, Jr., read to you in evidence, then the license of said Sweigart would not protect the defendant in such sale, and you should find the defendant guilty."

We have no brief for the State, and are not advised upon what ground it was supposed, that, if the appellant sold the liquor under and pursuant to the contract, the license of Sweigart would not protect him. We must, therefore, determine the question without knowing precisely the ground on which the charge was based.

It may be conceded, that, if the liquor sold by Keiser was, in whole or in part, his own liquor, the license of Sweigart would not protect him; for one could not be acting exclusively as the agent of another, when selling that which was in whole or in part his own. And therefore it may be conceded, that, if Keiser and Sweigart became, by virtue of the contract, partners, and if the liquor thereby became partnership property, the license of Sweigart would not protect Keiser in making the sale. *Shaw* v. *The State*, 56 Ind. 188.

But, on the other hand, if the contract did not make Keiser and Sweigart partners as between themselves, and if the title to the liquor was in Sweigart, and Keiser sold the same as the agent or employee of Sweigart, the license of the latter would protect Keiser in making the sale. If Sweigart had a license to retail, he might lawfully pursue his business, either in person or by agent, or

both, and his license will protect his agent as well as himself. *Runyon* v. *The State*, 52 Ind. 320.

Upon an examination of the contract between Keiser and Sweigart, we think it clear that it did not make them partners as between themselves, and probably not as to third persons.

Keiser let to Sweigart certain premises in which the business was to be carried on. Sweigart was to furnish the stock. In the language of the contract, he was "to keep up the stock and material required," and purchases were in all cases to be shipped and billed in his name. Keiser was to be employed by Sweigart in making purchases and sales, and was to pay bills out of the funds delivered and paid over out of the proceeds of the business. It is clear, by the terms of the contract, that Sweigart was the owner of the stock, and that Keiser was his agent for the purpose of making purchases and sales. Keiser was to have as compensation for his services, rent and use of fixtures, all the proceeds and receipts of the business, excepting two dollars per day, which was to be reserved to Sweigart as his share of the profits. This part of the contract, taken in connection with the other parts, we construe to mean that Keiser was to have as his compensation, etc., all the net proceeds and receipts of the business excepting the two dollars per day reserved to Sweigart.

Keiser had no lien on the profits as against creditors, for the amount of his compensation; and the fact, that the amount of his compensation depended upon the amount of the net profits, did not make him a partner even as to third persons. He was to have all the net profits as his compensation for services, rent, etc., except two dollars per day, whether the profits were great or small. His compensation might have been something or nothing, as the business might have been profitable or otherwise. That the stipulated compensation did not make him a partner, is well settled by the authorities.

*Macy* v. *Combs,* 15 Ind. 469; *Emmons* v. *Newman,* 38 Ind. 372; *Bradley* v. *White,* 10 Met. 303; *Holmes* v. *Old Colony Railroad Corp.,* 5 Gray, 58; *Berthold* v. *Goldsmith,* 24 How. 536.

We are of opinion, for these reasons, that, if the appellant sold the liquor by virtue of, and pursuant to, the written contract, he sold the liquor of Sweigart, and as his agent, and that he is protected by the license of the latter; and, therefore, that the court erred in giving the charge set out.

The judgment below is reversed, and the cause remanded for a new trial.