## The State v. Dudley.

[No. 5,182.    Filed October 11, 1904.]

INTOXICATING LIQUORS.—*License.*—*Removal of Licensee from County.*—*Sales by Employe.*—A license to sell intoxicating liquors at retail will not protect an employe of the licensee from liability for sales made by him as such within the period for which the license was granted, after the licensee has permanently changed his residence to a county other than that in and for which the license was granted.

From Wabash Circuit Court; *A. H. Plummer*, Judge.

Charles Dudley was indicted for selling intoxicating liquors without a license. From a judgment of acquittal the State appeals. *Appeal sustained.*

*C. W. Miller*, Attorney-General, and *C. H. Brower*, Prosecuting Attorney, for State.

*D. F. Brooks*, for appellee.

BLACK, C. J.—The appellee was indicted for selling intoxicating liquor without a license. Upon trial by the court he was acquitted. The evidence consisted of an agreed statement of the facts, from which it appeared, among other things, that the appellee, at the time of the sale in question, was conducting a saloon in the city of Wabash, Wabash county, where the sale was made by him as an employe of one Morrow, owner of the saloon and of the liquor sold, under a written contract of employment between Morrow and the appellee. The sale was made in September, 1903. Morrow was duly licensed to sell liquors at that place for one year from January 20, 1903, he being then, and for more than three months prior to that date, a *bona fide* resident of Noble township, Wabash county, Indiana. He sold intoxicating liquors under the license until March 1, 1903. About that time he removed to the city of Peru, Miami county, Indiana, where he was living at the time of the trial, having continuously lived there from about March 1, 1903. The appellee had no license,

and the sale in question was made in pursuance of the employment under the written contract above mentioned, which was entered into April 1, 1903.

The only question presented for decision is whether or not license to sell intoxicating liquors at retail under the statutes of this State will protect an employe of the licensee from liability for sales made by him as such within the period for which the license was granted, but after the licensee has permanently changed his residence to a county in this State other than that in and for which the license was granted. It has been held in a number of cases that, while a license to sell intoxicating liquors is not transferable by assignment or otherwise, a licensed retailer of intoxicating liquors may employ an agent to conduct and carry on the business, and that such an agent would not be liable to prosecution for selling without license. *Pickens* v. *State,* 20 Ind. 116; *Runyon* v. *State,* 52 Ind. 320; *Keiser* v. *State,* 58 Ind. 379; *Heath* v. *State,* 105 Ind. 342.

In *Pelley* v. *Wills,* 141 Ind. 688, which was an application to obtain a license, it was said: "A liquor dealer is responsible for actionable injuries caused by sales of liquors made by his agent or servants, and it is no defense that such sale was made without his knowledge or against his express orders." Section three of the act of March 17, 1875 (Acts 1875, p. 55, §7278 Burns 1901), to regulate and license the sale of spiritous, vinous, malt, and other intoxicating liquors, etc., provides: "Any male inhabitant over the age of twenty-one years, desiring to obtain license to sell intoxicating liquors, shall give notice to the citizens of the township, town, city, or ward in which he desires to sell," etc.

In *Ex parte Laboyteaux,* 65 Ind. 545, it was decided that this section did not require that the applicant for license should be a resident either of the county in which he made his application, or of any other subdivision of the

State; that it was sufficient as to the matter of residence if he was an inhabitant of the State.   See, also, *Murphy* v. *Board, etc.,* 73 Ind. 483.

In *Welsh* v. *State,* 126 Ind. 71, 9 L. R. A. 664, a prosecution under section twelve of the act of 1875, *supra,* it was said: "The law does not require that the person to whom the license is issued shall be a citizen of the State. The law does require that he shall be a male inhabitant, but we need not stop to argue that there is a broad distinction between a citizen and a mere inhabitant.   It is not an unreasonable requirement that a person who desires to avail himself of a license to retail intoxicating liquor shall submit himself to the jurisdiction of the State, by becoming an inhabitant thereof, to the end that he may be readily apprehended and punished for any violation of the law in connection with his business."

By section one of the act of 1895 (Acts 1895, p. 248, §7283a Burns 1901) it is provided: "That hereafter all persons applying for license before any board of county commissioners, under the existing laws of the State of Indiana, to sell spirituous, vinous, malt or other intoxicating liquors, shall, in such application, specifically describe the room in which he desires to sell such liquors,   *   *   * provided, that no license shall be granted to any other than a male person over the age of twenty-one years, and one who shall at the time be of good moral character," etc. By section eight of the act of 1895 (§7283h Burns 1901) it is provided: "No more than one license shall be granted or issued to any one person and in no case to any person other than the actual owner and proprietor of said business, who must apply in his own name and be a continuous resident of the township in which the application for license is made, at least ninety days' time prior to the time of application," etc.

In the statute of 1873 (Acts 1873, p. 151), regulating the sale of intoxicating liquors, was a provision that "any

person desiring a permit to sell intoxicating liquors to be drunk on the premises, shall file in the office of the auditor of the proper county * * * a petition in writing, stating therein the building or number, street, ward or township wherein the permission is asked to be granted, praying for such permit, and certifying that the applicant is a resident voter of such county, and a citizen of the State of Indiana, and that he is a proper person to have and receive such permit."

In *Krant* v. *State,* 47 Ind. 519, the court had this provision under consideration in a prosecution for selling without license by an agent or bartender of the owner of a saloon who had received a permit to sell at a place in Jefferson county, in this State, and who at the time of the sale in question had removed to and was residing in the State of Kentucky. The court, adverting at length to the purposes which the legislature sought by the statute to subserve, which purposes are no less manifest in the law now in force, concluded and held that "the legislature intended to provide that the person who received the permit should, during the existence of such permit, remain a resident voter of the county, and a citizen of the State of Indiana;" and that the voluntary removal from the State of the person having a permit worked a forfeiture of the rights and privileges under it, unaided by a judicial determination declaring a forfeiture, though the statute did not expressly so provide; and that when the authority of the principal thus determined, that of his agent also ceased. That statute required expressly, as to the matter of residence, only the certifying in the petition that the applicant was a resident voter of the county and a citizen of the State at the time of the filing of the petition, not less than twenty days before the first day of the term of the county board. If, considering the apparent purposes of the legislature in the statutes, and applying such intent to the language employed in the statutes respectively, the require-

ment of continued residence within the locality mentioned in the statute was correct in the case last above cited, we can see no reasonable ground for denying the existence of the like requirement under the statutes now in force.

The act of 1895 does not expressly require that the applicant for license, who must be a continuous resident of the township (and therefore of the State and the county), at least ninety days' time prior to the time of the application, shall remain a resident in such locality while in the enjoyment of the privilege under the license. This requirement as to residence could not be regarded as fulfilled, if the applicant at some time, at least ninety days before the application, let us say six months or a year before that time, was a continuous resident there, but before making the application, let us say one month or three months or four months prior thereto, had permanently taken up his residence elsewhere, and therefore would not be a resident of the township at the time of the application or at the time of the granting of the license.

Although it has been held that the statute of 1875 only required residence in the State, yet we think that it was not contemplated by the legislature that the applicant should be such resident only at the time of "desiring to obtain a license," and at the time of giving "notice to the citizens of the township, town, city or ward in which he desires to sell;" but it was contemplated that he should be an inhabitant of the State at the time of the granting of the license, and also while carrying on the business thereby permitted. Manifestly, it was within the contemplation of the court in *Welsh* v. *State, supra,* that the legislature intended to require the licensee to "submit himself to the jurisdiction of the State," by being an inhabitant thereof while carrying on business under the license.

The statute of 1895 requires that the person to whom a license is granted must be the actual owner and proprietor of the business, and must be a continuous resident of the

State *v.* Dudley.

township, at least ninety days prior to the time of application. It must be supposed that the legislature here intended that he must be a continuous resident there, not merely before or at the time of the application, but also when the license is granted, and thereafter during his enjoyment of the privilege of a licensee.

This prosecution does not involve an attack upon the action of the board of county commissioners in granting the license; it does not proceed upon an assumption that the license was not a sufficient protection to the licensee or his employe or agent, while they could be regarded as carrying on the business under and pursuant to the rights and privileges conferred by it; but the case proceeds upon the theory that those rights and privileges may be forfeited by the voluntary relinquishment of the necessary qualification of residence prescribed in effect by the statute. It can not properly be conceded that the provision of the law of 1895 concerning the residence of the applicant was inserted merely for the purpose of enabling the citizens of the locality to ascertain the applicant's fitness to be entrusted with the sale of liquor in their midst, and to avail themselves of the privilege of remonstrating.

In all the statutes to which we have referred, there has been manifested a purpose of the legislature to place about the retail liquor traffic a safeguard by way of prescribing for the licensees qualifications tending to minimize the inevitable evils of the business. The purpose of such statutes is not to encourage the traffic, but rather to narrow its dangers, the extent of which is largely dependent upon the qualifications of the particular persons to whom the control of the business is entrusted. It is plain that very much of such contemplated restraining influences would be less likely to be exercised by proprietors residing continuously away from the neighborhood of the business, and unacquainted, therefore, with the persons of their customers and their habits, and unable personally to supervise

the conduct of the business. The qualifications prescribed, other than that of residence in the vicinity, would be largely unavailing for the accomplishment of the benefits intended, and the obligations placed by the law upon the keepers of drinking places would be less likely to be faithfully and continuously heeded, if the law were so construed as to permit the permanent residence of the licensee at any place to which he might voluntarily remove, not beyond the limits of the State. It is contemplated, not merely that he shall remain within limits where he may be reached by legal process, but also that he shall remain where he will have the ability to see personally that the business is carried on within the restrictions placed upon it by law.

The license is a personal privilege not transferable, and the personal fitness of the licensee is a matter of legislative concern; his fitness not merely when an applicant, but also at all times while in the enjoyment of the privilege. It is the purpose of the legislature to regulate the traffic, in part, through the particular persons found by the board of county commissioners to be qualified to have charge and control of the business.

Appeal sustained.