## BOND v. MAY.

[No. 5,787. Filed June 22, 1906.]

1. PARTNERSHIP.—*Accounting.—Recovery by Partner Without.*— One partner cannot recover from another any sum that may be due on account of partnership matters without an accounting. p. 398.

2. ACCOUNTS. — *Tenancy in Common.—Partnership.—Individual Debts.*—A tenant in common may sue his cotenant for an accounting and have a decree without taking into account a debt of such cotenant for which the tenant is surety, the fact that such tenants each assisted in the conduct of the farm and that after their division thereof one of them managed both farms, giving the other part of the net profits as rent, not constituting a genuine partnership. p. 399.

From Jasper Circuit Court; *Charles W. Hanley,* Judge.

Suit by Peter May against Wilbur D. Bond. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Foltz & Spitler,* for appellant.

*Jesse E. Wilson,* for appellee.

BLACK, J.—The appellee, who was the plaintiff, and the appellant, who was the defendant, in 1894, contracted with one Parkinson to purchase from him certain real estate, being two adjoining quarter sections of land in Jasper county; and Parkinson, in February, 1895, by his general warranty deed, conveyed the land to the appellee and the appellant as tenants in common, the purchase price being $11,200. At and before this conveyance the grantees paid a part of the price, $3,500, each paying an equal portion thereof, and they became jointly indebted to Parkin-

son for the remainder of the price, $7,700, and they executed to him their mortgage therefor upon the half section. The appellee was the appellant's father-in-law, and they resided with their families in the same neighborhood in Illinois, and the appellee continued to reside there; but in the spring of the year 1895 the appellant removed with his family to the land so conveyed to him and the appellee, took possession of the half section, and continued to occupy and to use for agricultural purposes the two quarter sections for eight years thereafter. He brought with him certain agricultural implements and animals owned by him, and the appellee sent to the farm certain agricultural implements and animals owned by him, which were used upon the farm. In August, 1895, the appellant conveyed to the appellee the undivided one-half interest of the former in the western quarter section, and the appellee conveyed to the appellant the undivided one-half interest of the former in the adjoining eastern quarter section, each conveying for the expressed consideration of $5,600, and the deed of conveyance to each being expressly made subject to the purchase-money mortgage to Parkinson, and each grantee by the terms of the deed of conveyance to him assuming and agreeing to pay, as part of the consideration for the real estate so conveyed to him, the one-half of said mortgage and the one-half of the purchase-money notes to Parkinson secured thereby. There was evidence from which it might have been found that the sum of $6,000 of this balance of purchase money was paid in equal portions by the parties, and that the remainder thereof was paid by the appellant, who also paid the taxes on the two tracts while he continued to occupy and use the appellee's quarter section, and also paid the greater portion of the interest as it accrued upon the unpaid part of the purchase money; that the appellee paid a small portion of the interest, and furnished to the appellant, personally, certain definite sums of money.

After the land had been thus fully paid for, the appellant, who for eight years had resided with his family in a dwelling upon his own quarter section, using the other quarter section as a part of his farm, ceased to hold and use the quarter section so owned by the appellee, which thereupon was taken by its owner, who proceeded to erect a dwelling-house thereon, and thereafter this land was occupied and used by another son-in-law of the latter. At this time some of the animals and implements so furnished by the appellee were retaken by him.

This was a suit for an accounting and for the recovery of any balance found due the appellee, there being a counterclaim filed by the appellant. The court found there was due to the appellee from the appellant $678, and that the latter should account to the former for that sum, and that such sum due the appellee from the appellant was wholly unpaid. As part of the finding, it was stated: "The court does not take into account any indebtedness that may be owing by the partnership, and does not decide any question concerning the same."

This statement in the finding furnishes the subject of the contention here. It is true, as suggested on behalf of the appellant, that one partner cannot maintain a

1. suit against his copartner to recover an alleged indebtedness of the latter to the former growing out of the partnership transactions, until the affairs of the partnership are closed up and its debts are paid. *Briggs* v. *Daugherty* (1874), 48 Ind. 247; *Lang* v. *Oppenheim* (1884), 96 Ind. 47; *Powell* v. *Bennett* (1892), 131 Ind. 465. A court will not ordinarily entertain matters relating to partnership accounts between partners, until by its judgment or decree a final adjustment of the partnership business can be effected. *Thompson* v. *Lowe* (1887), 111 Ind. 272. One partner may maintain a suit to compel an accounting and to recover such sum as may be found due him upon the final adjustment of the partnership affairs,

and if necessary for the accomplishment of such result a receiver may be appointed; but in such an action there cannot be a recovery in favor of one partner against the other upon a partial adjustment of the affairs of the partnership which leaves some of the partnership debts unpaid. See *Meredith* v. *Ewing* (1882), 85 Ind. 410; *Miller* v. *Rapp* (1893), 135 Ind. 614; *Adams* v. *Shewalter* (1894), 139 Ind. 178.

It is very difficult to ascertain from the record before us any definite terms or understanding of the parties upon which the land of the appellee was held and used by the appellant. The evidence in this respect is obscure and somewhat contradictory. The parties appear therefrom to have been ignorant and unmethodical, and their intentions are indicated by their conduct more than by any expressions to each other shown in evidence. Perhaps their relationship and the fact that the daughter and grandchildren of the appellee were members of the appellant's family residing on the land contributed to the indefiniteness of the dealings of the parties with each other. A dwelling-house and some farm buildings were on the eastern quarter section, which in the voluntary partition was conveyed to the appellant, and he and his family resided there from the beginning of their occupancy; and it appears to have been agreed that, whenever the appellee should determine to build a residence on his own quarter section, the appellant should pay the appellee one-half the value of those improvements upon the land so owned originally by the parties as tenants in common; also, that the appellant and his family should have the right to consume and appropriate to their own use so much of the products of the land as might be needed for their subsistence, without any obligation to account therefor to the appellee; also, that the land originally held in cotenancy should be divided equally, each party owning in severalty one quarter section and paying the original grantor therefor one-half of the pur-

chase price of the whole half section; also, that the appellant should occupy and cultivate all the land and own its products and dispose thereof at his pleasure, and after providing for his family out of such products should apply the remaining surplus of the net income of the farm to the payment of the taxes thereon, including the taxes on the appellee's quarter section, and to the payment of the accruing interest upon the unpaid purchase money, for the payment of one-half of which, as between themselves, each was bound to the other, and also to the payment of unpaid principal; and that when the appellee should take over the possession and use of his separate portion of the land, the animals and utensils furnished by him should be restored to his possession. Whatever surplus of the net income was thus applied in payment of principal, interest and taxes was used for the equal benefit of each of the parties, and its payment in that manner amounted to an equal division of such surplus, which perhaps can scarcely be called the net profits of a business, especially in view of the use of an indefinite and varying portion of the income in the support of the appellant and his family. It seems to have been the intention of the parties that the appellee was entitled to have the one-half of such surplus applied to his benefit as compensation for the use of his portion of the land and of the use and enjoyment for the time being of his personal property, which continued to be owned by him individually. It seems to have been contemplated that such personal property should be returned or accounted for, and that one-half of the value of the improvements on appellant's quarter section, and one-half of any net surplus of income not paid out for the benefit of both parties as purchase money, interest and taxes should be accounted for; and that any sums of money furnished by the appellee to the appellant at the special instance and request of the latter for his individual uses should be repaid or accounted for. While the word "partnership" was used

somewhat frequently in the court below, especially on the part of the appellant, the relation of the parties to each other does not seem to be properly so characterized. Some of the appellee's demands were based upon his right to a portion of the surplus of the income of the farm; yet such portion was due him as compensation for the use and enjoyment of his property, rather than as a share of the net profits of the business of a partnership.

The indebtedness referred to in the finding was evidenced by two certain promissory notes, one dated December 23, 1899, for $500, signed by the appellant and by the appellee, and one dated August 20, 1900, for $1,000, signed by the appellant and his wife and by the appellee. These notes were payable to the appellant's father, and were given, the first for $500 borrowed by the appellant from his father, at its date, the second for $500 so borrowed at its date, and also in lieu of a note of the appellant alone theretofore given for $500 previously borrowed by him of his father. The loans were made to the appellant individually. The notes were not signed in a firm name. There was no firm name, and there does not appear to have been any authority in either party to sign his own name as a firm name, or for or on behalf of both of the parties, or any intention to do so. Each signed as an individual, as and for himself alone. Each note was signed by the appellee some time after its execution, and, so far as appears in this case, without consideration. The money for which the notes were given did not become the property of the appellee, and he does not appear to have had any control over its disposition; and he testified that he did not know how it was used. It was owned and controlled by the appellant alone, who used it for various purposes, paying some of it upon the principal mortgage debt, some for interest thereon, some for taxes, some for cattle purchased by him alone, and some for wages of men who worked on the farm. Some payments were made by the appellant to his

father upon this indebtedness with money derived from profits from the land. If he used any part of this, his own money, for the benefit of the appellee, and not wholly for payment of his own portion of the joint debt, and thereby an obligation as to such part arose as between the parties, this would not render the notes evidences of partnership indebtedness to the payee thereof, in case it could be held that there was a partnership; this money in such case constituting capital paid in by the appellant. Considering the matter with reference to the actual relation of the parties, the appellee might be answerable to the appellant for some part of the money obtained and used for the benefit of the appellee to the extent that the appellant was not reimbursed therefor by and through the surplus of the net income retained by him. He would have to account for and pay to the appellee so much less of the surplus of the net income.

The court could properly regard the unpaid notes as having been given for money borrowed by the appellant alone for his own use, and therefore might properly hold, as it in effect did hold, that the outstanding notes ought not to be considered as entering into the account between the parties adjusted in this suit. The parties were not partners *inter se,* and they did not hold themselves out as such to the payee of the notes, which were not given nor received as the notes of a partnership. See *Hubbell* v. *Woolf* (1860), 15 Ind. 204; *Ditts* v. *Lonsdale* (1875), 49 Ind. 521.

To be a partner, one must have an interest with another in the profits of a business, as profits. There must be a voluntary contract to carry on a business with intention of the parties to share the profits as common owners thereof. A person who receives a share of the net profits of a business as compensation for services or in lieu of rent for the use of property, real or personal, is not thereby made a partner. See 22 Am. and Eng. Ency. Law (2d ed.), 36; *Macy* v. *Combs* (1861), 15 Ind. 469; *Emmons* v. *Newman*

(1871), 38 Ind. 372; *Keiser* v. *State* (1877), 58 Ind. 379; *Bradley* v. *Ely* (1900), 24 Ind. App. 2, 79 Am. St. 251.

There were no special findings, properly so called, and the finding in which the remark above quoted occurs is to be considered as a general finding. Whether the remark of the court may properly be regarded as in itself presenting any question for decision we do not determine, but we have not been disposed to avoid the question discussed by counsel, and we conclude that the disposition of the cause as indicated by the remark so inserted in the finding was not materially erroneous, though the court below incorrectly adopted the term "partnership," loosely used in the course of the proceedings.

Judgment affirmed.