**J.M. SCHULTZ SEED COMPANY, Plaintiff-Appellant,**

v.

**David ROBERTSON, In His Individual Capacity, and John King and David Robertson, d/b/a Crop Systems, Defendants-Appellees.**

No. 1–982A274.

Court of Appeals of Indiana, First District.

July 5, 1983.

John W. Van Laere, Parker, Brummer, Siemer, Austin & Resch, Effingham, Ill., for plaintiff-appellant.

Gary L. Watson, Gary L. Watson & Associates, Lebanon, for defendants-appellees.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant J.M. Schultz Seed Company (Schultz) appeals a negative judgment in a trial before the Boone Circuit Court without a jury in its suit on partnership debts against an alleged partner, John King (King).

We affirm.

### STATEMENT OF THE FACTS

From the first part of May until June 5, 1979, Schultz made sales of agricultural chemicals to David Robertson d/b/a Crop Systems, payment for which became due July 10, 1979. On August 15, 1979, as a part of delinquent account collection procedures, Schultz took Robertson's note for the $97,208.87 balance which he executed as "partner." At that time Robertson told Schultz representatives that before he signed it he wanted to talk to King, his partner. When the note was not paid, suit was brought against both Robertson and King on the theory of the existence of a partnership. The trial court entered judgment for Schultz against Robertson, but in favor of King. The trial court found that no partnership existed on August 15, 1979, nor had King signed or agreed to pay the note. On this appeal Schultz contends that the evidence compels the conclusion that Robertson and King were general partners and King should be liable individually also.

The evidence on the subject of the existence of a partnership is as follows: King, in the early part of 1979, had cosigned renewal notes to the Citizens Bank and Trust Company of Lebanon for David Robertson d/b/a Crop Systems. On August 15 and October 8, 1979, Robertson told Schultz's representative, in effect, that King was his partner. He said that King was helping him work out financial solutions and he wanted to consult him before signing the August 15 note. However, all of Robertson's statements concerning King were made after the sales and no reliance on King's credit was involved in the sales. On October 8, 1979, and in January, 1980, King met with Schultz representatives, attempting to work out an arrangement for paying the debt by installments. In 1980, Schultz received a personal financial statement of King. The financial statement for the year ending December 31, 1979, prepared sometime in 1980 by Robertson and his accountant, reflects a John King capital account of $80,000. A partnership tax return for 1979, prepared in 1980, showed Robertson and King as partners. The return showed heavy losses from Crop Systems.

Robertson testified that in early August, 1979, he considered King a partner. He had borrowed money from King in October, 1978, and early 1979, and had entered it on the books of Crop Systems as a capital account for King. King also had cosigned other notes for him. Robertson stated that he believed King was a general partner:

> "Because at the time when we put the note funds that were mine personally that I borrowed from John into the capital accounts or into the contribution of the company, it was my opinion at that time that we should be considered partners to protect John, more than anything else."

The capital account entries were not made in Crop Systems' books until year end.

When asked about the nature of his involvement with Crop Systems, John King testified, "I guess I'd be a partner." However, he further stated that he had loaned Robertson money in the fall of 1978 and all through 1979, but he did not consider himself a partner until sometime in the early spring of 1980. After consulting with his attorney and accountant he decided in 1980 to consider it a partnership for tax return purposes. Until that time he carried the loans to Robertson as notes receivable, and he did not consider himself a partner until that determination in 1980. King stated that his further involvement with Robertson and Crop Systems occurred because he had loaned Robertson as much as $400,000. King's actions of cosigning notes and attempting to work out financial solutions were to prevent foreclosure on Robertson so as to protect King's own loans. King stated that he had no voice in the management, but was consulted by Robertson on some major decisions. There had never been a partnership agreement, written or oral, and none was discussed until 1980. Nor was there any agreement between King and Robertson to share profits.

## ISSUE

The sole issue is whether the trial court erred in concluding that a partnership did not exist at the time of the incurrence of the debt or the execution of the note.

## DISCUSSION AND DECISION

If a partnership existed at the time of the transactions King would be liable. Ind.Code 23–4–1–15. Probably an accurate and comprehensive definition of a partnership has not been stated. *Bacon v. Christian,* (1916) 184 Ind. 517, 111 N.E. 628. A partnership is an association of two or more persons to carry on a business for profit as co-owners. Ind.Code 23–4–1–6. Mere tenants in common or joint tenancies in property do not, by themselves, establish a partnership. Nor does the sharing of gross income. The receipt of a share of the profits is *prima facie* evidence of a partnership, but such inference is not applicable where the profits are received as payment of wages, debt, rent, interest, a loan or a sale. Ind.Code 23–4–1–7. Generally, the question of the existence of a partnership is one of fact. *Musgrave v. Madonna,* (1976) 168 Ind.App. 145, 341 N.E.2d 789. In *Vohland v. Sweet,* (1982) Ind.App., 433 N.E.2d 860, we reviewed the creation of partnerships as follows:

> "Under Ind.Code 23–4–1–7(4) receipt by a person of a share of the profits is *prima facie* evidence that he is a partner in the business. *Endsley v. Game-Show Placements, Ltd.,* (1980) Ind.App., 401 N.E.2d 768. Lack of daily involvement for one partner is not per se indicative of absence of a partnership. *Endsley, supra.* A partnership may be formed by the furnishing of skill and labor by others. The contribution of labor and skill by one of the partners may be as great a contribution to the common enterprise as property or money. *Watson v. Watson,* (1952) 231 Ind. 385, 108 N.E.2d 893. It is an established common law principle that a partnership can commence only by the voluntary contract of the parties. *Bond v. May,* (1906) 38 Ind.App. 396, 78 N.E. 260. In *Bond* it was said, '[t]o be a partner, one must have an interest with another in the profits of a business, as profits. There must be a voluntary contract

to carry on a business with intention of the parties to share the profits as common owners thereof.' *Id.,* 38 Ind.App. at 402, 78 N.E. 260."

433 N.E.2d at 864. Essential to the formation of a partnership is a contract, either express or implied. *Kavanaugh v. England,* (1953) 232 Ind. 54, 110 N.E.2d 329.

■ Schultz does not contest the above recited rules, but contends that the facts of this case, upon application of the rules, compel the conclusion that a general partnership existed at the time of the sale of goods or by August 15, 1979, when the note was signed. In *Vohland, supra,* we stated the standard of review as follows:

> "The standard of review for a case such as this was stated in *Endsley, supra.*
> 'In reviewing the evidence to determine its sufficiency, we may only look to that evidence and the reasonable inferences to be drawn therefrom most favorable to the appellee. *Butler v. Forker* (1966), 139 Ind.App. 602, 221 N.E.2d 570. This Court will neither weigh the evidence nor judge the credibility of the witnesses. *Butler, supra.* It is the province of the trial court to determine which witness to believe when it hears the evidence. *Jackman v. Jackman* (1973), 156 Ind.App. 27, 294 N.E.2d 620, 625. We cannot reverse upon the basis of conflicting evidence. *Franks v. Franks* (1975), 163 Ind.App. 346, 323 N.E.2d 678, 680. In order to reverse the finding of the trial court, the evidence must lead solely to a conclusion which is contrary to that reached by the lower court. *Butler, supra; Puzich* [ (1974), 161 Ind.App. 191, 314 N.E.2d 795] *supra.* In viewing the evidence before us in the prescribed fashion, we find that it does not lead solely to a conclusion which is contrary to that reached by the trial court.'"

433 N.E.2d at 865. In this case there is evidence from which it can be legitimately inferred that there was no agreement at all creating a partnership until 1980. The trier could legitimately infer that the partnership tax return, the capital account, both prepared in 1980, were merely retroactive attempts by King to credit losses against other income, and not attempts to create a partnership retroactively. The evidence is such that the trier could properly conclude that during 1979, King's relationship with Crop Systems was merely that of a creditor, and there was no intent to form a partnership at the times critical here.

■ Schultz also argues the theory of partnership by estoppel, codified under Ind. Code 23–4–1–16. However, there is no evidence that King, prior to or at the time of the sales of goods or the execution of the note, made any representation to Schultz at all. In fact, Schultz did not know King existed. The first mention of King was by Robertson on August 15, 1979. Estoppel, under the statute, requires a holding out and a reliance. Such does not exist here.

For the above reasons this cause is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.