Nov. Term,
1860.

HUBBELL and Others *v.* WOOLF and Others.

HUBBELL
v.
WOOLF.

15  204
142  487
143  703
15  204
151  395

In actions upon contract, under our code, whether the contract be joint and several, or joint only, the plaintiff may have judgment against those of the defendants as to whom a good cause of action is made out, though he fail as to the others.

Where several persons are sued jointly, as partners, and one of them answers separately, denying that he was a partner, his co-defendants are competent witnesses as to such defense, as it is not a matter in which such co-defendants are jointly interested or liable with him, and does not go to defeat a recovery against them.

But if the contract sued upon is admitted by the answer, and a defense set up which would defeat the action as to all the defendants, such co-defendants are not competent witnesses to establish the defense.

Where the verdict and judgment are right, on the merits, this Court will not reverse the judgment on account of errors in the instructions.

In order to make a note signed in the individual name of one of the partners, binding upon a firm, it must appear affirmatively, that it was given and received as a firm note, binding upon all the partners.

A partnership is founded in the voluntary contract of the parties, as contradistinguished from the relations which may arise between the parties by mere operation of law.

Wednesday,
December 5.

APPEAL from the *Shelby* Common Pleas.

WORDEN, J.—Action by the appellants, against the appellees, upon three promissory notes, alleged to have been made by the defendants by the name and style of *H. M. Morrison.* The following is a copy of one of the notes, the others being like it, except as to date, amount, and time of payment.

"$338.                    "*Cincinnati, June* 25, 1857.

"Six months after date I, the subscriber, of *Morristown,* County of *Shelby,* State of *Indiana,* promise to pay to the order of *Hubbell, Alexander & Driver,* three hundred and thirty-eight dollars, payable at their office, for value received, with interest at ten per cent. after maturity, without any relief from valuation or appraisement laws of *Indiana.*

(Signed.)   "*H. M. Morrison.*"

*Morrison* made default. Each of the other defendants filed separate answers under oath, denying the execution by them respectively of the notes sued on, and denying that he was a partner of the other defendants, or either of them, or

that he had ever given any authority for the execution of such notes. Trial by jury: verdict and judgment for the defendants, *Woolf* and *Woolf*, and judgment for plaintiffs against *Morrison*.

The appellants assign errors upon the rulings of the Court upon objections to the admission of testimony, and in charges to the jury.

On the trial, it appeared that *Morrison* executed the notes, and the plaintiffs sought to hold the two *Woolfs* liable thereon, upon the ground that they were the partners of *Morrison*. Each of the *Woolfs* offered the other as a witness, to prove that the party so offering the testimony, was not a partner of the other defendants. The evidence was received over the objection of the plaintiffs, and this ruling presents the first question raised.

There are three sections of the code that seem to have a bearing upon the question thus presented. Section 302. "A party may be examined on behalf of his co-plaintiff or co-defendant, as to any matter in which he is not jointly interested, or liable, with such co-plaintiff or co-defendant, and as to which a separate, and not a joint, judgment shall be rendered." Section 366. "Though all the defendants have been summoned, judgment may be rendered against any of them, severally, where the plaintiff would be entitled to judgments against such defendants, if the action had been against them severally." Section 368. "Judgment may be given for or against one or more of several plaintiffs, or for or against one or more of several defendants."

Under these statutory provisions, we think it clear, that in actions against several upon contract, whether the contract be joint and several, or joint only, the plaintiff may have judgment against one or more of the defendants, if he shall make out a good cause of action against them, although he fail as to the others. This proposition is settled by the case of *Blodget* v. *Morris*, 14 N. Y. Ct. Ap. 482. *Selden*, J., in delivering his opinion says, after quoting a statutory provision substantially like our own: "This provision applies to all actions indiscriminately, whether founded upon contract or upon tort; and, as I understand its terms, it is immaterial

whether the complaint alleges a joint liability only, or one which is joint and several. The right of recovery is to be regulated, in this respect, by the proof, and not by the allegations in the complaint. In other words, every complaint against two or more defendants is to be treated as both joint and several. The object of the provision obviously is, to prevent a plaintiff, who proves a good cause of action against part of the defendants, but not against the others, from being put to the expense and delay of a new action. It was not intended to change the law in any other respect; but simply applies to actions upon contract, the same rules which, at common law, were applied to actions for torts."

The case at bar being a proper one for rendering a separate judgment against one or more of the defendants, and in favor of others, if the facts warrant such judgment, we proceed to inquire whether the parties thus offered as witnesses, were jointly interested, or liable, with the parties thus offering them, in respect to the matters upon which they were called upon to testify. The defense set up by each of the *Woolfs*, is only a defense so far as he is concerned, and does not go to defeat the action as against all the defendants; for if one or both succeed, judgment may still rightly be rendered against the others. The success of one of the *Woolfs*, in his defense, would have no influence whatever, in determining the liability of the other. The case is entirely different from one where the execution of the contract sued upon is admitted, or not denied, by the defendants, but a defense is set up which, if true, defeats the action as against all the defendants; as for instance, usury, in *New York*, which was pleaded in *Blodget v. Morris, supra*, where the Court say: " If a security is usurious as to one, it is as to all; and each defendant is equally interested in every fact that would tend to prove the usury." Fraud also, practiced upon one of several joint-contractors, defeats the action as to all; and consequently, one defendant can not call upon his co-defendant to prove the alleged fraud. *The City Bank of Columbus* v. *Bruce* and *Fox*, 17 N. Y. Ct. Ap. 507. Here, neither of the *Woolfs* is interested in the question whether the other is liable on the notes as a partner, because the determination of that question, either way, does not in any manner affect his

own liability; and the *New York* cases above referred to, decided upon statutory provisions similar to our own, clearly settle the proposition that they were competent witnesses for each other to prove the matters testified to by them.

In reference to the instructions complained of, it may be observed that several were given, and it may be that they were not all strictly correct; but, if otherwise, we are of opinion that the verdict and judgment are clearly right on the merits, and where such is the case, judgment will not be reversed. Ind. Dig. § 432, p. 685.

The notes, on their face, only purport to bind *Morrison*, and it may not be entirely clear that, upon such notes, the other defendants could be held liable upon proof that they were partners with *Morrison*, either dormant or ostensible. " With respect to dormant partners," says Mr. *Chitty*, " they are bound by the acts of their co-partners as to all implied contracts, but are not liable on express contracts with the known and acting partners." Chitty on Cont. by Perk. 249. But suppose that the defendants were partners, adopting the name and style of *H. M. Morrison* as the firm name, then a question might arise whether the signature attached to the notes was intended as his individual signature, or that of the firm. There seems to be some incongruity in making the name of *Morrison*, signed to the notes, include himself and two others jointly with him, when in the body of the note he says "I," &c., "promise." If the plaintiffs and *Morrison* understood that the name attached to the notes was a partnership name, and included himself and the *Woolfs*, as makers, it would be much more natural that the plural instead of the singular pronoun should have been used. In order to make such note binding on the firm, it must appear affirmatively, that it was given, and also received, as a firm note binding upon all the partners. Story Part., § 139, Note 1. In this respect the evidence is far from being satisfactory, even on the supposition that the partnership was made out.

But an insuperable difficulty in the way of the plaintiffs' recovery, and the ground upon which we decide the case, is, that there was a failure to prove the partnership of the *Woolfs*, or either of them, with *Morrison*. Taking the testimony of

*Morrison* himself, who was introduced by the plaintiffs to prove the partnership, as containing the facts of the case, it seems to us that there was no partnership between the parties, either *inter sese*, or as between themselves and the world.

It appears that some time in the *Spring* of 1856, *Morrison* then being in business, he and *Jacob G. Woolf* had conversations about a partnership to be formed between the *Woolfs* and himself. *Morrison* says he never talked with *Henry Woolf* about the partnership. Written articles were drawn up, containing the terms of the proposed partnership, but they were not to be signed until an inventory should be made out of the stock of goods which *Morrison* then had on hand. Before the invoice of the goods on hand was made out, each of the *Woolfs* advanced to *Morrison* the sum of $250, for which he gave them a receipt, and he went to *Cincinnati* and bought goods; the partnership to be closed up, as he says, when he returned. The agreement, however, was never signed by either of the *Woolfs*. In *November* of the same year, *Morrison* asked *Henry Woolf* for some money to buy goods, and he advanced him $300. *Morrison* seems to have treated the money advanced as a loan, for he says he paid no interest on the moneys loaned to him by the *Woolfs*. Thus matters stood until the *Spring* of 1857, when an abstract of the business being made out and shown to *Henry Woolf*, he told *Morrison* that, in consequence of having to pay some security debts, he could not let him have any more money; that he would have to do the best that he could. *J. G. Woolf* was willing to sign the agreement, but *Henry* was not. *Henry* said, when he refused to sign the agreement, that all he wanted or expected was the interest on his money; that he always considered it a loan. Witness says that " *Henry Woolf* never consented at any time, by words, to the agreement, except by the payment of money, which he supposes the doctor (*J. G.*), may have told him about. *Jacob G. Woolf* never consented to sign the articles of partnership, or go into partnership, except upon the condition that *Henry Woolf* would sign the agreement." Again, the witness *Morrison* says that he did not regard the agreement for a partnership as having been consummated, because not signed. In the *Fall* of 1856, and *Summer*

Nov. Term,
1860.

HUBBELL
v.
WOOLF.

of 1857, *J. G. Woolf* often said to *Morrison*, that if there was a partnership to be entered into, it ought to be closed up. In *September* 1857, *Morrison* gave notes to the *Woolfs* for the money advanced by them.

The testimony is voluminous, but we have selected the points upon which, as we think, the case depends.

It is clear that there was no partnership between the parties, unless the advance of money by the *Woolfs* to *Morrison*, in anticipation of a partnership to be formed in future, constituted them partners. *Morrison* never talked with *Henry Woolf* about the partnership at all. *Jacob G.* never consented to sign the agreement, or go into partnership, unless *Henry* would sign the agreement. It is an established principle of the common law, that a partnership can commence only by the voluntary contract of the parties. That the money thus advanced, did not constitute the parties advancing it partners, we think clear. They might, undoubtedly, recover it back, the proposed agreement for a partnership not being perfected: but it would not make them partners, even as between themselves and the world, for it would not entitle them to any share of the profits of the proposed business. Judge *Story* says, that a partnership "Is founded in the voluntary contract of the parties, as contradistinguished from the relations which may arise between the parties by mere operation of law, independent of such contract." Story Part. § 3.

There may be, and undoubtedly are, cases in which persons may be held liable as partners, to third persons, when their contract does not contemplate a partnership as between themselves: as where they are to participate in the profits, but the losses are to be borne exclusively by one party. Story Part. § 60. But this supposes that there is such a contract between them as entitles them to share the profits. No such contract appears in the case at bar.

*Per Curiam.*—The judgment below is affirmed, with costs.

*S. Major*, for appellants.

*M. M. Ray*, for appellees.