ISAACS, TRUSTEE *v.* FLETCHER AMERICAN
NATIONAL BANK ET AL.

[No. 15,467. Filed December 21, 1935. Rehearing denied
March 12, 1936. Transfer denied March 15, 1937.]

*Bernard Stroyman, Julius C. Travis* and *Otis E. Gulley,* for appellant.

*Edgar M. Blessing* and *Barnard & Walker,* for appellees.

DUDINE, J.—This is an action for conversion instituted by appellant against appellee Fletcher American National Bank which will hereinafter be referred to as "bank." After the action was brought the bank was declared insolvent, and was duly placed in the hands of appellees Feucht, Collett and Fleming, as trustees. By supplemental complaint, said appellee trustees were made party defendants to the action.

The complaint was in four paragraphs, all of which alleged conversion of $4,300.00 deposited in the bank by appellant.

The answer consisted of four paragraphs, the first being a general denial and the fourth alleging that "the moneys and funds which the plaintiff in said cause alleges were wrongfully paid out and disbursed by the defendant herein did not and do not constitute money and funds belonging to the plaintiff in this cause."

The third paragraph of answer alleged:

"That the funds deposited in the defendant's bank by the plaintiff herein as trustee were in truth and in fact partnership funds of a partnership composed of the plaintiff in his *individual* capacity, Ralph K. Kane, E. L. Cord, William R. Higgins and C. H. Boyles; . . .

"That before the accrual of said alleged cause of action the above named individuals had associated themselves together as partners for the purpose of drilling and developing an oil well on a lease in the State of Texas, and that the said C. H. Boyles, one of said partners, was at the time, and on and before the 23rd day of May, 1927, personally engaged in drilling said well and was personally in charge of the drilling thereof for and on behalf of said partnership, and was buying materials and supplies for said partnership for use in the drilling of said well and for use in placing casing therein.

"That said partnership was created and evidenced by an instrument in writing dated as of March 31, 1927, and executed personally by said C. H. Boyles, Ralph K. Kane, William R. Higgins and M. A. Isaacs; that said written partnership agreement was and is in the following words and figures, to wit: (copy of agreement, which is elsewhere incorporated in this opinion, and therefore is not copied here.)"

"That the defendant in this cause, The Fletcher American National Bank of Indianapolis, had knowledge of the existence of said partnership and of the purpose thereof and had been informed specifically *by said Ralph K. Kane,* one of said partners, of the existence of said partnership and of the purpose thereof before said money described in plaintiff's amended complaint was disbursed; and had further been informed by said *Ralph K. Kane,* one of said partners, before the disbursing of said funds, that the funds of said partnership were deposited in the defendant bank in the name of M. A. Isaacs, trustee; and likewise said Kane further informed the defendant, on or about the 23rd day of May, 1927, and at the time it transferred said funds by use of telegram and use of the Federal Reserve System, that the funds so being transferred to said C. H. Boyles in the State of Texas from the said account of M. A. Isaacs, trustee, were funds belonging to said partnership hereinbefore described, . . .

"The defendant further alleges that the $4,300.00 mentioned in the plaintiff's complaint was sent to said C. H. Boyles upon his request and for the purpose of paying for casing, and for the benefit of said partnership, and that the said funds were sent to the said C. H. Boyles upon the request and at the direction of said Ralph K. Kane, one of the members of said partnership, and that the said Kane *had authority to direct the payment of said funds,* and that the said plaintiff in this case knew that an emergency then existed for securing said casing in order to avoid a cave-in of said well, and said plaintiff further knew that said casing could not be procured excepting for cash. . . ."

The second paragraph of answer was similar to the third paragraph, in general effect.

Appellant filed a reply of general denial to each the 2nd, 3rd and 4th paragraphs of answer.

The cause was tried by the court without a jury, and the court found for appellees, and rendered judgment that appellant recover nothing.

In this appeal the sole error relied upon for reversal of the judgment is the overruling of appellant's motion for new trial. The grounds for new trial, set forth in the motion therefor, were that the decision of the court is not sustained by sufficient evidence, the decision of the court is contrary to law, and alleged errors in rulings of the court admitting evidence over objections of appellant.

The evidence indisputably shows that the alleged "partnership" agreement, referred to in the third paragraph of answer, was executed on March 31, 1927. The alleged co-partners of appellant, Kane, Cord and Higgins, contributed to the alleged partnership fund by delivering their contributions to appellant as disbursing agent for the alleged partnership. An oil well was sunk on the lease referred to in said agreement, and on May 23, 1927, appellant and Kane were informed by telegram from C. H. Boyles (a party to said agreement), that the well was down to a point where they had to have some pipe to prevent a cave-in and that this casing had to be obtained immediately; that Boyles had bought the casing from a supply house in Oklahoma, but the supply house would not deliver the casing without an approval of the order by appellant. Appellant authorized the supply house to deliver the casing, and draw upon him at appellee bank for $4,300.00, the price of the casing, and agreed to accept and honor such draft upon arrival at the bank, if the original bill of lading covering said casing was attached.

For several months prior to the date of the execution of said agreement appellant carried an *"individual"*

checking account in said bank in the name of "M. A. Isaacs, Trustee." Subsequent to said date appellant had issued several checks against said account in favor of Boyles and other persons for expenditures connected with said oil well venture.

After appellant had agreed to accept such draft, on May 23, 1927, he told Kane that he, appellant, had to go to New York City, and would probably be out of Indianapolis when said draft would arrive at the bank, and appellant gave Kane his check in the sum of $4,300.00, payable to the bank, drawn against said checking account, and instructed Kane to deliver the check to the bank and to tell the bank to wire the money to the supply house *upon receipt of such draft with bill of lading attached.* Appellant proceeded to New York that (Saturday) afternoon. That evening Boyles called Kane by telephone from Texas and told him he had bought the necessary casing from another firm at a better price, but it had to be a cash deal, and asked Kane to wire him the money.

On the following Monday, Kane delivered the check to the cashier of the bank, informed him of the instructions given by appellant that the money should be wired to the supply house upon receipt, by the bank, of such draft with bill of lading attached; that appellant had gone to New York, and that he, Kane, did not know how to reach appellant. Kane also informed the bank of his conversation with Boyles on Saturday evening wherein Boyles asked Kane to wire the money to him and Kane told the cashier about the oil venture, and who were parties thereto. Kane also told him that he, Kane, had consulted Mr. Higgins, one of the parties to the venture, about wiring the money to Boyles, and that Higgins agreed that the money be sent to Boyles by the bank.

In response to Kane's representations the cashier said the bank would send the money to Boyles. The

bank did send the money to Boyles, and charged the check against said checking account. Boyles did not buy casing with the money, but converted it to his own use.

Appellant contends that there is no evidence showing that the bank was authorized by appellant to send said money to Boyles.

Appellees contend that the evidence shows that a partnership was created by Boyles, Kane, Cord, Higgins, and appellant, and that Kane, as such partner, was an agent of appellant, authorized to bind appellant and the other members of the alleged partnership in all matters within the general scope of the partnership business, and that Kane did bind appellant by instructing the bank to send the money to Boyles.

Appellant contends the evidence does not show a partnership, because it does not show *an intention* on the part of said alleged partners to *form a partnership*.

"Preliminary to a consideration of . . . (said contentions) . . . it is important to determine, in general, the nature of the partnership relation and to ascertain its essential elements. Jurists and text-writers agree that an accurate and comprehensive definition of a partnership has not been stated; that the lines of demarcation which distinguish a partnership from other joint interests on the one hand and from an agency on the other, are so fine as to render approximate rather than exhaustive any attempt to define the relation. . . . The principal inquiry in a given case, however, is not so much, What is a partnership? as whether, under the facts at bar, there is a partnership liability, and definitions are of value in the solution of such questions only in so far as they suggest tests to be applied. These tests vary to some degree in different jurisdictions but for the purposes of this case it is necessary only to consider the expressions of the courts of Indiana. In the case of *Hubbell* v. *Woolf* (1860), 15 Ind. 204, 209, this court said: 'It is an established principle of the common law, that a partnership can commence only by the voluntary contract

of the parties.' In *Bond* v. *May* (1906), 38 Ind. App. 396, 402, 78 N. E. 260, this language is used: 'To be a partner one must have an interest with another in the profits of a business, as profits. There must be a voluntary contract to carry on a business with intention of the parties to share the profits as common owners thereof.' See, also, *Macy* v. *Combs* (1860), 15 Ind. 469, 77 Am. Dec. 103; *Breinig* v. *Sparrow* (1907), 39 Ind. App. 455, 461, 80 N. E. 37. From these, and other expressions of similar import, it is apparent that to establish the partnership relation, as between the parties, there must be (1) a voluntary contract of association for the purpose of sharing the profits and losses, as such, which may arise from the use of capital, labor or skill in a common enterprise; and (2) an intention on the part of the principals to form a partnership for that purpose." *Bacon* v. *Christian* (1916),184 Ind. 517, 520, 521, 11 N. E. 628 [followed in *Driscoll* v. *Sullivan* (1917), 186 Ind. 178, 115 N. E. 331, and *Graham* v. *U. S.* (1930), 44 Fed. (2d) 566.]

Appellant contends the fact of partnership depends entirely upon the written agreement, which is as follows:

"MEMORANDA OF UNDERSTANDING AS OF MARCH 31, 1927.

"Colonel Boyles suggested that he will give us five-eighths (⅝) interest in this lease for such parties as we may designate of the following:

"The Northwest Quarter (N. W. ¼) of the Northeast Quarter (N. E. ¼) of Survey Four (4) in Block "Y" M & C, Hutchinson County, Texas.

"We are to receive this five-eighths (⅝) interest for assisting in financing the off-set well on which there is now erected a derrick. We agree to advance Seventy-five Hundred Dollars ($7,500.00) on April 1st toward the payment of this well. No further funds shall be advanced until April 25th, at which time we agree to furnish him Five Thousand Dollars ($5,000.00) additional, then Five thousand Dollars ($5,000.00) on May 10th.

"Colonel Boyles has let a turnkey job for Twenty-eight Thousand Dollars ($28,000.00) oil to the tanks. The understanding that in the event we get an oil well we will pay up all balance due for the drilling of this well and in the event we get a dry hole, the salvage will be sold and pay for unpaid balance due on this well to the contractor.

"The understanding is to be as follows:
Ralph K. Kane to receive one-eighth working interest.
E. L. Cord two-eighths working interest.
William R. Higgins one-eighth working interest.
M. A. Isaacs one-eighth working interest.
The initial payment made by Ralph K. Kane to be $1,000.00.

| | |
|---|---|
| E. L. Cord | $2,000.00 |
| M. A. Isaacs | $1,000.00 |
| William R. Higgins | $1,000.00 |

"There shall be a cash call on Messrs. Ralph K. Kane for $1,500.00 additional.

| | |
|---|---|
| E. L. Cord | $8,000.00 |
| M. A. Isaacs | $4,000.00 |
| William R. Higgins | $4,000.00 |

"It is understood that if we get a producing well that there shall be a call on Ralph K. Kane for $2,500.00.

| | |
|---|---|
| E. L. Cord for | $5,000.00 |
| M. A. Isaacs for | $2,500.00 |
| William R. Higgins for | $2,500.00 |

to complete final payment.

"In the event they do not desire to put up the cash they agree to assign their oil runs for their interests to such party as we obtain a loan from to pay off the balance of the obligations and their share of oil runs shall be paid to such party loaning said amount from the pipe line runs until said amount is paid.

"The reason that Ralph K. Kane's interest costs less than the others is that he has been the attorney in the matter and has introduced this deal to us with a full understanding of all concerned and with a full release for any charges of fees until the matter is completed, for his services.

"The memoranda above was all unanimously agreed to.

(Signed) C. H. BOYLES,
(Signed) RALPH K. KANE,
(Signed) WILLIAM R. HIGGINS,
(Signed) M. A. ISAACS.

### 35000 FINANCIAL STRUCTURE TO DRILL WELL TO TANKS

|  |  | Cash Payment | 2nd Payment 4/25 | 3rd Payment 5/10 | Oil Payment |
|---|---|---|---|---|---|
| 1/8 | Ralph Kane.. | 1000.00 | 1000.00 | 500.00 | 2500.00 |
| 2/8 | E. L. Cord.... | 2000.00 | 3000.00 | 5000.00 | 5000.00 |
| 1/8 | Isaacs .......... | 1000.00 | 1500.00 | 2500.00 | 2500.00 |
| 1/8 | Higgins ........ | 1000.00 | 1500.00 | 2500.00 | 2500.00 |

#### EXPENDITURES:

April 1—Cash to pay for Derrick............$4500.00
" 1—Cash to pay to Driller................ 2000.00
" 10—Cash to pay to Driller................ 1000.00
" 25—Cash to pay to Driller................ 5000.00
May 10—Cash to pay to Driller................ 5000.00"

Appellees say in their brief "It is not the contention of the appellees that the "Memorandum of Understanding" pleaded by the appellees constituted articles of partnership, but said memorandum, together with other evidence shows all the essential elements of a partnership or joint enterprise." Appellees do not however designate the "other evidence" which, they contend, when considered with the agreement, shows that a partnership was created.

We have read said agreement and all the other evidence carefully but found no evidence which tends to show *an intention* on the part of the alleged partners, or any of them, *to form a partnership* for the purpose "of sharing profits and losses, as such, which may arise from the use of capital, labor or skill in a common enterprise." *Bacon* v. *Christian, supra.* Therefore we hold that the evidence is not suffi-

cient to sustain a finding that a partnership was created.

For the purpose of this case it should be noted that parties to a joint enterprise are not, as such, agents for the other parties to the joint enterprise, while members of a partnership firm, as such, are agents for the other partners.

Appellees also contend "considering the matter as one solely between appellant as principal and Kane as his agent, the appellant's directions to Kane clothed him with authority to adopt any recognized mode of doing the thing he was instructed to do." We are not in accord with said contention. Our view of the evidence is that it shows that appellant gave Kane *specific instructions* to deliver the check to the bank, and *to authorize the bank to wire the money, upon receipt of the draft with bill of lading attached*. We hold the evidence is not reasonably subject to a construction that appellant gave Kane power to decide what to do in the event of an emergency, and bind appellant by his decision. See Mechem on Agency, Vol. 1, 2d Ed., 285-1244.

Appellees further contend that the evidence does not show that said money belonged to appellant.

Actual ownership of the property allegedly converted is not necessary to maintain an action in conversion. Right to possession of the property is sufficient for that purpose. The evidence indisputably shows that appellant had right to possession of the $4,300.00 as disbursing agent of the alleged partnership, and for that reason, if for no other, appellant should not be denied a recovery, on account of lack of "ownership" of the money.

For the reasons above set forth we hold that the evidence is insufficient to sustain the decision of the court, that the decision is contrary to law, and therefore the

judgment should be reversed, and the trial court should be ordered to sustain appellant's motion for new trial.

Other alleged errors are presented by appellant's brief, but in view of the result reached in this opinion, we deem it unnecessary to discuss them.

Judgment reversed with instructions that appellant's motion for new trial be sustained.

### ON PETITION FOR REHEARING.

DUDINE, J.—In the briefs of both parties, on rehearing, our attention is called to the following statement in the opinion of this court, "Our view of the evidence is that it shows that appellant gave Kane *specific instructions* to deliver the check to the bank and *to authorize the bank to wire the money, upon receipt of the draft with bill of lading attached;*" and both parties contend that the evidence does not support such a statement.

The evidence does not show that appellant gave any *instructions* as to *how* the bank was to "take up" the draft. Our statement in that regard should have been as follows: "Our view of the evidence is that it shows that appellant gave Kane *specific instructions* to deliver the check to the bank *so that the bank could "take up the draft when it came."*

Statements to the same effect are made in two other places in the opinion, which this statement serves to explain.

Appellees' petition for rehearing is denied.