William R. BOYER, Appellant (Plaintiff Below),

v.

FIRST NATIONAL BANK OF KOKOMO, Indiana and Merchants National Bank & Trust Company, Appellees (Defendants Below).

No. 4–484A105.

Court of Appeals of Indiana, Fourth District.

April 17, 1985.

---

William M. Pope, Indianapolis, for appellant.

Peter G. Tamulonis, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellees.

CONOVER, Judge.

Plaintiff-appellant William R. Boyer (Boyer) appeals the judgment of the Marion Circuit Court in favor of appellees First National Bank of Kokomo (First National) and Merchants National Bank & Trust Company (Merchants), (collectively "the Banks").

We affirm.

ISSUES

1. Were Boyer and Twin Lakes engaged in a joint venture?

2. Did the Banks act in a commercially reasonable manner when they cashed two checks made payable to "Twin Lakes Steel Co., Inc. & Boyer" even though both checks were endorsed only by Twin Lakes?

FACTS

Boyer and Twin Lakes Construction Co. (Twin Lakes) executed a contract entitled "Joint Venture Agreement" regarding con-

struction and demolition work to be performed for Wilhelm Construction Co. (Wilhelm) on the "Lilly project". Wilhelm issued 12 checks in payment of Boyer's and Twin Lakes's services. Two of the checks, totalling $37,000, were made out to "Twin Lakes Steel Co., Inc. & Boyer." Twin Lakes cashed these two checks at First National even though only Twin Lakes had endorsed both of them with a rubber stamp. First National processed these checks by forwarding them to Merchants. Merchants then debited Wilhelm's account. Wilhelm is not a party to this suit.

Apparently, Twin Lakes spent the entire proceeds of the two checks. Boyer, not receiving any of the proceeds from either check, sued both First National and Merchants for conversion. They filed a joint motion for summary judgment. The case was heard on stipulated facts, and the trial court found Boyer and Twin Lakes were co-joint venturers.[1] It concluded the Banks acted in good faith and in accordance with reasonable commercial standards in cashing the checks even though only endorsed by Twin Lakes. Other pertinent facts are stated below.

## DISCUSSION AND DECISION

### I. *Standard of Review*

We first note the trial court here made special findings of fact under Indiana Rules of Court, Trial Rule 52. The trial judge found against Boyer, who carried the initial burden of proof at trial. Boyer therefore is appealing a negative judgment.

We employ a limited standard of review in such cases:

As an appellate tribunal, we may neither reweigh the evidence nor judge the credibility of witnesses.... Moreover, because [this case] ... was tried before the court and not a jury, its decision will be reversed only if clearly erroneous.... Such a finding will be made by this court when the evidence is uncontradicted and supports no reasonable inferences in fa-

vor of the decision, or, even when there is evidence supportive of the judgment if our review of the record leaves us with a "definite and firm conviction that a mistake has been made." (Citations omitted).

*Burnett v. Heckelman* (1983), Ind.App., 456 N.E.2d 1094, 1097; *see also First Federal Savings & Loan Association of Gary v. Stone* (1984), Ind.App., 467 N.E.2d 1226, 1234.

█ However, where a party challenges only the judgment as contrary to law and does not challenge the special findings as unsupported by the evidence, we do not look to the evidence but only to the findings to determine whether they support the judgment. *Paul Revere Life Insurance Co. v. Gardner* (1982), Ind.App., 438 N.E.2d 317, 320; *Indiana Industries, Inc. v. Wedge Products, Inc.* (1982), Ind.App., 430 N.E.2d 419, 422; *Merryman v. Price* (1970), 147 Ind.App. 295, 259 N.E.2d 883, 888 *cert. den.* (1971), 404 U.S. 852, 92 S.Ct. 89, 30 L.Ed.2d 92.

### II. *Commercial Reasonableness*

The trial court found the Banks acted in good faith and in accordance with reasonable standards in paying the checks over Boyer's missing endorsement. Because Boyer sufficiently challenges that finding, we must determine whether the evidence most favorable to the judgment is sufficient to support that special finding.

#### a. *Joint Venture*

Boyer first contends he and Twin Lakes were not engaged in a joint venture, thus the Banks could not raise IC 26–1–3–110(g) as a defense. We disagree.

█ A joint venture is an association of two or more persons formed to carry out a single business enterprise for profit, through the combination of their property and services. *O'Hara v. Architects Hartung and Association* (1975), 163 Ind.App.

---

1. Under this finding, the Boyer/Twin Lakes relationship was that of a "partnership or unincorporated association", as provided in Indiana's version of the Uniform Commercial Code, cf.

IND.CODE 26–1–3–110(g). The Banks defended on this basis because the statute permits endorsements by any authorized person.

661, 665, 326 N.E.2d 283, 286; *Baker v. Billingsley* (1956), 126 Ind.App. 703, 708, 132 N.E.2d 273, 275–76, *trans. denied.* A joint venture exists when an express or implied contract providing for (1) a community of interests, and (2) joint or mutual control, that is, an equal right to direct and govern the undertaking, binds the parties to such agreement. Neither criterion is dispositive of the point, however. *See, Stallings v. Dick* (1965), 139 Ind.App. 118, 134, 210 N.E.2d 82, 91. *See also,* 48A C.J.S. *Joint Ventures* § 10 (1981). The joint venture agreement must provide for sharing of profits but it need not distribute them equally. *See, Lafayette Bank & Trust Co. v. Price* (1982), Ind.App., 440 N.E.2d 759, 762; 48A C.J.S. *Joint Ventures* § 13 (1981). Sharing of losses, if the losses involve only time and labor, need not specifically be in the joint agreement. *Lafayette Bank,* 440 N.E.2d at 762; *Davis v. Webster* (1964), 136 Ind.App. 286, 295, 198 N.E.2d 883, 887. Distribution of other losses and expenses may be implied from the manner in which profits are to be shared. 48A C.J.S. *Joint Ventures* §§ 13, 39 (1981). Where it is the intent of the parties for all co-venturers to be subject to the risks of the business, a joint venture exists even though one co-venturer contributes capital and secures his contribution with a note. *See,* 48A C.J.S. *Joint Ventures* § 6 (1981). Finally, a joint venture is similar to a partnership except a joint venture contemplates only a single business transaction. A partnership, on the other hand, is formed for general business of a particular kind. *Lafayette Bank, supra,* 440 N.E.2d at 762; *Beck v. Indiana Surveying Co.* (1981), Ind.App., 429 N.E.2d 264, 268.

■ The agreement executed between Boyer and Twin Lakes provided in pertinent part:

### JOINT–VENTURE AGREEMENT

Let it be known that the above two parties, namely Twin Lake Steel Co., Inc. and William R. Boyer have agreed to furnish and erect to the above named contractor for the above named project Structural Steel, Metal Roof Deck, Miscellaneous Metals, Demolition, Demolition and reinstallation of existing steel as required by drawings all according to F.A. Wilhelm Construction Co., Inc., in the amount of $135,029.00, dated August 8, 1980.

It is further agreed that the two parties named ... shall share in the gross profits from this joint venture according to the following:

| | |
|---|---|
| Twin Lakes Steel Co., Inc. | 75% |
| William R. Boyer | 25% |

Gross profits to be determined upon completion of the project and distributed according to the above percentages.

Boyer put up $50,000 for the "Lilly project." This debt was evidenced by a $25,000 note executed by Twin Lakes, signed by Twin Lakes's president in both his corporate and individual capacities. The remaining $25,000 debt to Boyer was to be repaid "as the profits came in." Thus, at least half of Boyer's "investment" was subject to the risks of the business as there was no guarantee evidenced by a note for this amount Boyer would be repaid. Boyer's brief states he "performed some services with regard to disbursement of the draws received from the contractor." More specifically, the record indicates Boyer informed Wilhelm he and Twin Lakes "were going into this together." He also instructed Wilhelm to make checks for the project payable to Twin Lakes and Boyer after Wilhelm initially made the first checks on the project payable only to Twin Lakes. Boyer would then endorse these checks, already containing Twin Lakes's endorsement, and would deposit the funds in *his account.* He in turn would make a check payable to Twin Lakes drawn on his account for an amount calculated "according to need." This evidence indicates Boyer had considerable financial control over the project or at least was more than a passive investor.

Finally, the agreement itself labeled "Joint—Venture Agreement", was drawn up on Boyer's stationery and was witnessed by Boyer's wife. It indicated *both*

parties had a right to control the enterprise. It stated "the above two parties ... namely Twin Lakes and Boyer ... have agreed to furnish [to Wilhelm] and erect certain materials." The agreement also specified how profits were to be distributed. Thus, the agreement coupled with the conduct of the parties, demonstrate a joint-venture existed. The joint venture created by Boyer and Twin Lakes was a "partnership or unincorporated association" as defined in article 3. Therefore, the checks could be endorsed by any authorized party, in this case Twin Lakes.

### b. *Paying Check over Missing Endorsement*

■ Boyer alternatively argues even the existence of a joint venture does not absolve the Banks from liability. Under these facts, we hold it does.

Boyer initially sued the Banks for conversion under IC 26–1–3–419(1)(c). It provides "an instrument is converted when ... (c) it is paid on a forged endorsement." A check paid over a missing endorsement is treated the same as a check paid on a forged endorsement for purposes of conversion under this section. *See, Yeager and Sullivan, Inc. v. Farmers Bank* (1974), 162 Ind.App. 15, 17, 317 N.E.2d 792, 794; *see also, Humberto Decorators, Inc. v. Plaza National Bank* (1981), 180 N.J.Super 170, 174, 434 A.2d 618, 619.

The trial court found the Banks successfully defended on the basis they dealt with their instrument "in good faith and in accordance with the reasonable commercial standards applicable to the business" under IC 26–1–3–419(3) which says

(3) Subject to the provisions of this Act concerning restrictive endorsements a representative, including a depositary [2] or collecting [3] bank, who has in good faith [4] and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one (1) who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands. (Footnotes added).

Boyer cites *Yeager & Sullivan, Inc. v. Farmers Bank* (1974), 162 Ind.App. 15, 317 N.E.2d 792 for the proposition the Banks did not deal with the checks in accordance with reasonable commercial standards. However, in *Yeager* the Bank sued for paying on a check even though the endorsement of a coventurer was missing did not dispute the assertion both venturers' endorsements were needed. *Yeager*, 317 N.E.2d at 794. Indeed, the Bank there conceded the plaintiff established a prima facie case of liability against it. Such admission perforce established in that case the Bank did not deal with the instruments in accordance with reasonable commercial standards. *Id.* at 794. *Yeager did* decide the extent of the Bank's liability once its liability was established. However, *Yeager* is not dispositive as the gravamen here is whether the banks did act in accordance with reasonable commercial standards.

The designation on the checks cashed over Boyer's missing endorsement provided the check was paid to the order of

Twin Lakes Steel Co., Inc. & Boyer
P.O. Box 2731
Kokomo, Indiana 46901

**2.** A "depository bank" is defined as "the first bank to which an item is transferred for collection even though it is also the payor bank." IND.CODE 26–1–4–105(a). First National, therefore, is the depository bank here, as it was the first bank handling the checks for collection.

**3.** Similarly, a "collecting bank" is "any bank handling the item for collection except the payor bank." IC 26–1–4–105(d). A "payor bank" is a "bank by which an item is payable as drawn or accepted." IC 26–1–4–105(b). Because Wil-

helm's checks to Twin Lakes and Boyer were drawn on his account with Merchants, Merchants is a "payor bank."

**4.** "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." IC 26–1–1–201(19) "Good Faith" under this section is determined by a subjective standard or "good faith in fact", more aptly described as "the old white heart and empty head standard." White and Summers, *Uniform Commercial Code* (2nd Ed.1980) § 6–3, p. 218.

Nothing on the face of the check indicated these two parties were doing business as a joint venture. Factually, however, they were in this case. Thus, we need not decide whether a depository or collecting bank faced with a similar designation of co-payees reasonably may infer they are engaged in some type of single business enterprise so as to invoke on such banks' behalf the protective provisions of IC 26–1–3–110(g). The joint venture created by Boyer and Twin Lakes was an "organization" under IC 26–1–1–201(28):

> "Organization" includes a corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, *two (2) or more persons having a joint or common interest*, or *any other legal or commercial entity*.

The comment to this section acknowledges the broad definition of "organization" whereby it includes "every type of entity or association, excluding an individual, acting as such." Likewise, an organization is also a "person" under IC 26–1–1–201(30).

Thus, the entity "Twin Lakes, Inc." was a "person" whose name appeared both on the payee line and as the endorser of the check. IC 26–1–3–110(g) provides:

> (1) An instrument is payable to order when by its terms it is payable to the order or assigns of any person therein specified with reasonable certainty, or to him or his order, or when it is conspicuously designated on its face as "exchange" or the like and names a payee. It may be payable to the order of
>
> .     .     .     .     .

> (g) a partnership or unincorporated association, in which case it is payable to the partnership or association and *may be endorsed or transferred by any person thereto authorized.* (Emphasis supplied).

■ As co-venturer, Twin Lakes was authorized to endorse the checks made out to the joint venture. Co-venturers are agents of each other *as to third parties* for all acts within the scope of the enterprise.[5] *Lafayette Bank, supra,* 440 N.E.2d at 762; *O'Hara, supra,* 163 Ind.App. at 665, 326 N.E.2d at 286. Furthermore, the joint enterprise here was created for the purpose of furnishing to Wilhelm certain materials and services regarding the Lilly project. Negotiating and endorsing the check enabled both Twin Lakes and Boyer to continue furnishing materials and services to Wilhelm under the venture agreement and was within the scope of the enterprise. *See,* 46 Am.Jur.2d *Joint Ventures* § 4; 60 Am. Jur.2d *Partnership* § 132; *see also Womack v. First National Bank of San Augustine* (1981), Tex.Civ.App., 613 S.W.2d 548, 553. Nothing in the joint venture agreement specifically prohibited Twin Lakes from endorsing checks made payable to the venture. Had Boyer desired to have exclusive control over negotiating checks made out to the venture, he could have incorporated such a provision in the joint venture agreement. *See, Lentz v. United States* (1965), 346 F.2d 570, 574, 171 Ct.Cl. 537. The fact the banks had no actual knowledge of the existence of all these facts prior to accepting the checks endorsed only

---

**5.** *Isaacs v. Fletcher American National Bank* (1935), 103 Ind.App. 246, 198 N.E. 829, cited by Boyer, is distinguishable. Isaacs, a party to what apparently was a joint venture, exclusively undertook the duties of disbursing agent for the venture. Another co-venturer (Boyles) ordered casing supplies but the supplier refused to deliver the goods unless Isaacs approved the order. Isaacs gave a third co-venturer (Kane) a check drawn on the individual account "M.A. Isaacs, trustee" with which to pay the supplier and directed Kane to deliver the check to the bank with instructions to wire the check to the supplier. Kane instead gave the check to the bank and directed it to wire the money directly to

Boyles. Boyles converted the cash to his own use. The court reversed and held the bank liable for conversion, noting, *"for the purposes of this case* it should be noted that parties to a joint enterprise are not, as such, agents for the other parties to the joint enterprise ..." 103 Ind.App. at 255, 198 N.E. at 833. The court reasoned Isaacs gave Kane authority to direct the bank to wire the money to the supplier *only,* and *not* directly to Boyles. Here, however, neither Boyer by his conduct nor the joint venture agreement specifically prohibited any other joint venturer (Twin Lakes) from negotiating checks made out to the venture.

by Twin Lakes is of no moment since (1) Boyer and Twin Lakes actually were engaged in a joint venture, and (2) Twin Lakes was authorized to endorse the checks of the venture. In current parlance, the Banks "lucked out."

We note here Boyer did cash other Wilhelm checks made out to the venture after Twin Lakes endorsed them. Boyer's occasional practice was to cash the checks both he and Twin Lakes endorsed and then to deposit the proceeds in his own account. In his deposition, Boyer testified he deposited $62,000 in his own account, $46,000 of which he returned to Twin Lakes. In Boyer's opinion, these funds forwarded to Twin Lakes were used to cover expenses incurred in the venture. Regarding the proceeds from the two checks bearing only Twin Lakes' endorsement, the banks in their supplemental answers maintained these funds likewise were applied to debts of the joint venture for which Boyer would otherwise would have been personally liable. The only evidence in the record disputing whether these funds were applied to the venture's debts was Boyer's testimony he "was not satisfied" these funds were used for business expenses. Boyer presented *no* evidence these funds were used for other purposes. Furthermore, although he was to be paid 25% of any gross profit under the joint venture agreement, Boyer testified the project operated at a loss. It would be inequitable to allow Boyer to recover the proceeds of the two checks here where there was no guarantee he would have received any of the proceeds even had he endorsed the checks. Where a party sues for conversion under article 3, "it is as necessary for the plaintiff to establish the amount lost as it is permissible for the defendant to put forth a defense in mitigation of damages." *Yeager, supra,* 162 Ind.App. at 22, 317 N.E.2d at 797. Since the two checks here were endorsed by an authorized person, the banks acted in accordance with reasonable commercial standards in cashing them despite Boyer's missing endorsement.

Affirmed.

MILLER, P.J., and YOUNG, J., concur.