**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 11 2014, 10:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARIANNE WOOLBERT**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**AARON J. SPOLARICH**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of N.M., A.M. and H.M., minor children, and J.M., Father, | ) ) ) ) | |
| J.M., | ) ) | |
| Appellant-Respondent, | ) | No. 48A05-1307-JT-327 |
| vs. | ) ) ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable G. George Pancol, Judge
Cause Nos. 48C02-1302-JT-9, -10, & -11

**February 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

J.M. ("Father") appeals the involuntary termination of his parental rights to his children N.M., A.M., and H.M. In so doing, Father contends that the juvenile court's order is not supported by sufficient clear and convincing evidence.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts supporting the involuntary termination of Father's parental rights to his children, N.M., who was born on September 9, 1998, A.M., who was born on October 28, 2000, and H.M., who was born on December 17, 2001, reveal that, on July 5, 2012, the Madison County Department of Child Services ("MCDCS") received a report that Father had been molesting N.M. since N.M. was in kindergarten. The report further stated that Father was physically abusing all three children. Father did not deny that he physically abused N.M.

N.M., A.M., and H.M. were removed from Mother's[1] and Father's home on July 6, 2012, and were placed with their maternal grandparents. The juvenile court authorized MCDCS to file petitions alleging that the children were children in need of services ("CHINS"). MCDCS filed the CHINS petitions alleging that Mother was unable to care for the children and that Father had physically and sexually abused the children. The juvenile court conducted a detention and initial hearing, during which the juvenile court approved the continued removal of the children and placement with their maternal grandparents. At an additional hearing held on July 25, 2012, Father admitted the

---

[1] T.M., the children's mother, died on October 15, 2012.

2

allegations of the CHINS petitions, and the juvenile court adjudicated the children as CHINS.

On August 29, 2012, the juvenile court held a dispositional hearing, and entered its dispositional order.[2] The dispositional order directed Father to do the following:

1) Participate in individual counseling and follow all recommendations;
2) Participate in family counseling and follow all recommendations;
3) Complete a drug/alcohol assessment and follow all recommendations;
4) Successfully complete parenting classes;
5) Complete a psychiatric evaluation and follow all recommendations;
6) Obtain and maintain a legal and regular source of income; and
7) Obtain and maintain adequate housing.

*Id*. at 73-87. In addition, Father was ordered to refrain from having contact with N.M.

On March 1, 2013, MCDCS filed its petition to involuntarily terminate Father's parental rights to the children. On May 23, 2013, the juvenile court conducted an evidentiary hearing on the termination petitions and took the matters under advisement. The juvenile court entered its order terminating Father's parental rights on June 3, 2013. Father appeals from that order. Additional facts will be supplied.

**DISCUSSION AND DECISION**

We begin our review by acknowledging that this court has long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). When reviewing a termination of parental rights case, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider

---

[2] Although the dispositional order addressed both parents, we recite the portions of the order pertaining to Father only as Mother is deceased.

3

only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Here, in terminating Father's parental rights, the trial court entered specific findings and conclusions. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *L.S.*, 717 N.E.2d at 208.

The "traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. These parental interests, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* In addition, although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *K.S.*, 750 N.E.2d at 836.

Before an involuntary termination of parental rights may occur, the State is required to allege and prove, among other things:

(B)    that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State's burden of proof for establishing these allegations in termination cases "is one of 'clear and convincing evidence.'" *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). Moreover, if the court finds that the allegations in a petition described in section 4 of this chapter are true, the court *shall* terminate the parent-child relationship. Ind. Code § 31-35-2-8(a) (emphasis supplied). Father challenges the sufficiency of the evidence supporting the juvenile court's order.

At the outset, we observe that Indiana Code section 31-35-2-4(b)(2)(B) is written such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. *See e.g. L.S.*, 717 N.E.2d at 209. When reviewing a judgment

5

requiring proof by clear and convincing evidence, our Supreme Court has stated the following:

> an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

*In re Guardianship of B.H.*, 770 N.E.2d 283, 288 (Ind. 2002) (citing *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind.1988)). "Clear and convincing evidence need not reveal that 'the continued custody of the parents is wholly inadequate for the child's very survival." *Bester*, 839 N.E.2d at 148 (quoting *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1233 (Ind. 1992)). "Rather, it is sufficient to show by clear and convincing evidence that 'the child's emotional and physical development are threatened' by the respondent parent's custody. *Id.* (quoting *Egly*, 592 N.E.2d at 1234).

When making such a determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court may also consider any services offered to the parent by the county department of child services, here MCDCS,

6

and the parent's response to those services, as evidence of whether conditions will be remedied. *Id.* Moreover, the MCDCS is not required to provide evidence ruling out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *See In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

Father does not challenge the juvenile court's conclusions that the children have been removed from his care for the requisite time period set forth by statute. Ind. Code §31-35-2-4(b)(2)(A)(i). As such, Father has waived any challenge alleging that MCDCS proved that element at the termination hearing. *See* Ind. Appellate Rule 46 (A)(8)(a) (contentions on issues presented must be supported by citation to authority, Appendix, and record); *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 900 (Ind. Ct. App. 1997) (failure to present cogent argument results in waiver on appeal).

Father does challenge the juvenile court's conclusions that 1) there is a reasonable probability that the conditions that resulted in N.M., A.M., and H.M.'s removal will not be remedied,[3] 2) there is a reasonable probability that continuation of the parent-child relationship poses a threat to the children's wellbeing,[4] 3) that termination is in the best interest of the children,[5] and 4) that MCDCS has a satisfactory plan for the care and treatment of the children.[6]

---

[3] *See* Ind. Code § 31-35-2-4(b)(2)(B)(i).

[4] *See* I.C. § 31-35-2-4(b)(2)(B)(ii).

[5] *See* I.C. § 31-35-2-4(b)(2)(C).

[6] *See* I.C. § 31-35-2-4(b)(2)(D).

7

We observe that Father does not challenge any of the juvenile court's findings of fact. Those unchallenged facts will stand as proven. "[W]here a party challenges only the judgment as contrary to law and does not challenge the special findings as unsupported by the evidence, we do not look to the evidence but only to the findings to determine whether they support the judgment." *Smith v. Miller Builders, Inc.*, 741 N.E.2d 731, 734 (Ind. Ct. App. 2000) (citing *Boyer v. First Nat'l Bank of Kokomo*, 476 N.E.2d 895, 897 (Ind. Ct. App. 1985)). Upon review, our task is to examine the juvenile court's unchallenged findings to determine whether they support the juvenile court's judgment. *See generally City of Whiting v. City of East Chicago*, 266 Ind. 12, 19, 359 N.E.2d 536, 540 (1977) (providing that party waives challenge to sufficiency of evidence supporting trial court's findings when party does not provide any argument relating to sufficiency of trial court's findings on appeal).

Regarding whether the conditions that led to the children's removal will not be remedied, we reiterate that the juvenile court must judge a parent's fitness to care for his children at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Father contends that MCDCS simply gave up on the plan to reunite him with the children, by failing to provide services upon Father's incarceration in September 2012.

Indiana Code section 31-34-21-5.5 requires the local department of child services to make reasonable efforts to preserve and reunify families during CHINS proceedings. However, Father appeals from the order involuntarily terminating his parental rights to his children. "We observe that the CHINS provision [requiring reasonable efforts to reunify and preserve families] is not a requisite element of our parental rights termination statute,

8

and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) (citing *In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000)). "[T]he provision of family services is not a requisite element of our parental rights termination statute, and thus, even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal." *In re E.E.*, 736 N.E.2d at 796. Therefore, Father's argument along that vein does not support his argument for reversal of the juvenile court's decision.

Nonetheless, we note that the MCDCS did stop providing services to Father upon his incarceration in September 2012. MCDCS was not required, however, to provide services directed at reunification of Father with his children while he was incarcerated. *See Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 622 (Ind. Ct. App. 2006) (because of Father's incarceration, OFC did not communicate with Father throughout CHINS or termination proceedings concerning reunification with his children and did not provide services to Father). Father's own actions resulted in his incarceration and resulted in MCDCS's inability to provide services.

Additionally, we reject Father's assertion that "the precise reason for removal no longer exists." *Appellant's Br*. at 12. Although Father focuses on the initial reason for removal, the termination statute also focuses on the bases resulting in continued placement outside the home. *See In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005).

The evidence presented at the termination hearing included the disclosures the children made during their therapy at Aspire, a non-profit comprehensive community

9

mental health center. H.M. remembered a time when Father drop-kicked him, causing H.M. to land on his stomach and face, and breaking his glasses. H.M. further recounted a time when he and A.M. were required by Father to hold down N.M.'s legs while Father punched N.M. H.M. also spoke of a time when Father shove and kicked him. Each of the children referred to Father making them help him sell Mother's prescription drugs, but N.M. provided more detail about Father requiring them to package the drugs for sale. A.M. indicated that Father placed his toe inside A.M.'s mouth on one occasion, and that Father would pick up A.M. by his neck. Father had grabbed N.M. by the throat. Besides their own physical abuse, the children saw Father slapping or otherwise physically abusing Mother in their presence.

In addition to the physical abuse, the children confirmed that Father had sexually abused them by touching their private parts. Father fondled N.M. on both the outside and inside of his clothing. N.M. was forced to perform oral sex on Father and disclosed in a forensic interview that Father had anally penetrated him. N.M. slept with a baseball bat at night as a result of his fear that Father would come to maternal grandparents' home. N.M. also wanted to acquire a BB gun in the event that Father was released from police custody.

At the termination hearing, Father characterized his behavior toward N.M. as "an innocent game of cup check." *Tr.* at 71. Father described the game of cup check, as catching a person off guard while providing the answer "Bangkok" as the capital of Thailand, and tapping the outside of their cup. *Id.* at 72. Father explained his conviction for Class D felony sexual battery of N.M. as involving the same game, but without the involvement of a cup, and that Father hit the outside of N.M.'s penis. Father claimed that

10

he pleaded guilty to the sexual battery in order to spare N.M. and claimed that the game was not played for sexual gratification. Father admitted that he had physically abused N.M.

The juvenile court correctly concluded that those facts supported the conclusion that the conditions that led to the children's removal will not be remedied. Father sexually abused N.M., physically abused all three children, forced the children to assist in the sale of prescription drugs, and exposed them to domestic violence. Father's testimony at the termination hearing minimizing the events that led to his conviction for sexual battery of N.M. lends further support to the conclusion that, as of the time of the termination hearing, the conditions that led to the children's removal would not be remedied.

Father has failed to meet his burden of showing that the juvenile court's conclusion was not sufficiently supported by clear and convincing evidence. This basis alone would dispose of Father's appeal. However, we address his remaining contentions.

Father asserts that the juvenile court's conclusion that Father's relationship with the children posed a threat to the children's wellbeing is not supported by clear and convincing evidence. He argues that "[t]here has been no showing that a return of the children into the custody of their Father would place them into a situation that is totally inadequate and places their very survival in question." *Appellant's Br.* at 12. However, he uses an inappropriate test for this assessment.

A juvenile court need not wait until the children are irreversibly influenced by a deficient lifestyle such that their physical, mental, and social growth is permanently impaired before making the decision to terminate the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). Where the evidence shows that the emotional

11

and physical development of the children is threatened, termination of the parent-child relationship is appropriate. *Id*.

With respect to this argument, all of the facts set forth in our discussion above support the juvenile court's conclusion. Put succinctly, Father has physically, sexually, and emotionally abused his children. The children received services to assist them with the effects of the abuse they suffered at Father's hands. The children do not want to be reunited with Father and are fearful of him. Based upon this history of abuse, Father's challenge of the juvenile court's conclusion fails.

Father challenges the conclusion that termination of his parental rights to the children would be in the best interests of the children. When considering the best interests of the child or children, a juvenile court must subordinate a parent's interests to those of the child. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). The juvenile court is required to look beyond those factors identified by the local department of child services and to consider the totality of the evidence. *Id*. Furthermore, the recommendations of the case manager and court-appointed special advocate ("CASA") to terminate parental rights, in addition to evidence that the conditions leading to the removal of the children from the home will not be remedied, is sufficient to show by clear and convincing evidence that termination of parental rights is in the child's, or in this case, the children's, best interests. *Id*.

As previously discussed above, there was sufficient evidence to establish that the conditions leading up to the children's removal would not be remedied. The children's CASA testified that "[t]hese children should absolutely not be with [Father]." *Tr*. at 50.

The CASA further testified that the children are terrified of Father, and that termination of parental rights was in the children's best interests. The family case manager testified that, in her opinion, continuation of the parent-child relationship posed a threat to the children's wellbeing.

The children have lived with maternal grandparents since November of 2011, with MCDCS formally placing them in maternal grandparents' care in early July of 2012. One of the children's therapists testified that the children want to stay with their maternal grandparents because of the bond they have established and the feeling of safety there. Another therapist believed that the children were happy in maternal grandparents' care and were comfortable there. The children have shown progress in addressing the trauma of their Father's abuse and the loss of their Mother. The unchallenged findings of fact sufficiently, clearly, and convincingly, show that termination of parental rights is in the best interests of the children.

Arguably, Father has presented a challenge to the juvenile court's conclusion that MCDCS has a satisfactory plan for the children, which is adoption by maternal grandparents. Notwithstanding Father's apparent waiver of his challenge by failing to present cogent argument, the juvenile court's conclusion here is clearly and convincingly supported by the juvenile court's findings of fact. Father claims that there is no guarantee that maternal grandparents will adopt the children or that the children will remain together.

"[I]n order for the [juvenile] court to terminate the parent-child relationship the [juvenile court] must find that there is a satisfactory plan for the care and treatment of the child." *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000). The plan need not be

13

detailed, but should offer a "general sense of the direction in which the child will be going after the parent-child relationship is terminated." *Id.* We have held that even where there is no specific family identified as prospective adoptive parents, the plan for adoptive placement can be satisfactory. *Id.* "Attempting to find suitable parents to adopt the children is clearly a satisfactory plan." *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007). The children have been placed with maternal grandparents since their removal from their parents' home. MCDCS was not required to guarantee that the adoption would take place or that the children would remain together. As such, the juvenile court did not err in concluding that adoption was a satisfactory plan for the children.

We will reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Matter of A.N.J.*, 690 N.E.2d 716, 722 (Ind. Ct. App. 1997) (quoting *Egly*, 592 N.E.2d at 1235). Based on the record before us, we cannot say that the juvenile court's termination of Father's parental rights to N.M., A.M., and H.M. was clearly erroneous. We therefore affirm the juvenile court's judgment.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.

14